STATE of Wisconsin, Plaintiff-Respondent,

v.

Samuel NELIS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2005AP1920–CR. Oral argument January 4, 2007.
—Decided May 22, 2007.*

2007 WI 58

(Also reported in 733 N.W.2d 619.)

417

For the defendant-appellant-petitioner there were briefs by *Robert A. Ferg* and *Ferg & Sinclair, Ltd.*, Chippewa Falls, and oral argument by *Robert A. Ferg*.

For the plaintiff-respondent the cause was argued by *Jeffrey J. Kassel,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. N. PATRICK CROOKS, J. This is a review of an unpublished per curiam decision of the Court of Appeals,[1] affirming the decision of the Ashland County

---

[1] *State v. Nelis,* No. 2005AP1920–CR, unpublished slip op. (Wis. Ct. App. May 4, 2006).

Circuit Court, Judge Robert E. Eaton presiding, which entered a judgment of conviction following a jury trial against Samuel Nelis (Nelis) as a repeat offender, on one count each of battery, aggravated battery, and second-degree sexual assault by use of force.

¶ 2. In his petition for review, Nelis claims that oral statements were erroneously admitted as prior inconsistent statements, that the State of Wisconsin (State) did not disclose such oral statements in advance, and further, that his right to confrontation under *Crawford v. Washington,* 541 U.S. 36 (2004) was violated. Nelis claims that all of this occurred because Chief Jim Stone of the Bad River Police Department (Police Chief Stone) was permitted to testify at his trial, as to alleged oral statements of another witness, Steve Stone. Steve Stone had previously testified at Nelis' trial concerning the sexual assault incident and his statements to the police on the night of the incident.

¶ 3. We hold that the oral statements of Steve Stone were properly admitted as prior inconsistent statements of a witness in accord with Wis. Stat. § 908.01(4)(a) (2003–04),[2] and that the State was not required to disclose such oral statements in advance. We further hold that Nelis' right to confrontation, as explained in *Crawford,* was not violated because Steve Stone testified at trial about the sexual assault incident and his statements to the police, and was subject to cross-examination concerning those statements. The record does not establish that he became unavailable for recall to the stand after he testified.

¶ 4. The decision of the court of appeals is therefore affirmed.

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

419

## I

¶ 5. Nelis was convicted of battery, aggravated battery, and second degree sexual assault, following a jury trial that was held on August 23 and 24, 2004, in Ashland County Circuit Court, Judge Robert E. Eaton presiding. The three charges for which Nelis was convicted arose from incidents involving his girlfriend, Diane S. The first charge of battery arose from an incident in February 2004, in which Nelis allegedly threw a full beer can and struck Diane S. in the head. The aggravated battery charge arose from an incident a few days later in which Nelis allegedly punched Diane S. in the face, resulting in black eyes, a swollen face, and blurred vision in her left eye. The sexual assault charge arose from a third incident in February 2004, in which Nelis allegedly choked Diane S. and forced her to have sexual intercourse with him.

¶ 6. At trial, the State's primary witness with regard to the sexual assault charge was Diane S. Diane S. testified that, on the day of the sexual assault incident, she and Nelis were at Amy Jenson's house in the city of Ashland. Diane S. said that she accused Nelis of shooting up drugs, and then went into a bedroom so that she could examine Nelis' arms for needle tracks. According to Diane S.'s testimony, Nelis choked her while they were in the bedroom. Diane S. then walked out of the bedroom and encountered David Stone, who suggested that Diane S. go into Amy Jenson's room.

¶ 7. Diane S. said that she declined David Stone's suggestion and went back into the room where Nelis was. She said that Nelis wanted to have sex with her, but she refused. Diane S. testified that Nelis then punched her in the mouth and choked her again. She was bleeding and screamed at Nelis to get off her. Diane

S. said that Nelis then ripped off her jeans and had intercourse with her. Diane S. further testified that a man heard her screaming and came into the bedroom to see if she was alright. On cross-examination, Diane S. testified that she and Nelis had had consensual sexual intercourse in the past, but that she did not consent to sexual intercourse during this incident.

¶ 8.   On the morning of the first day of trial, the State informed the court that it had subpoenaed Steve Stone to appear as a trial witness, but he had not appeared. The State asked the court to issue a material witness warrant. In response to the court's inquiry regarding the testimony that Steve Stone would provide, the prosecutor said that Steve Stone had provided a statement that he had walked into the bedroom during the alleged sexual assault, that he had seen Nelis on top of Diane S., and that Diane S. had been crying and had a bloody face. The circuit court granted the State's request and issued a material witness warrant for Steve Stone.

¶ 9.   In its opening statement, the State told the jury about testimony that it would hear:

> You are actually going to hear from a witness who heard Diane cry, whimper. And he got up and he walked into the bedroom and he saw Sam on top of Diane as Diane was crying and as she was bleeding from her face and whimpering. And at that time Sam got off her and that incident was over.

¶ 10.   Steve Stone was not called as a witness on the first day of Nelis' trial, but the court reminded Steve Stone that he was still under subpoena and that he was out on bond. The next day, the State called Steve Stone as a witness. Steve Stone testified that he "kind of" remembered talking to law enforcement officers after

421

the alleged sexual assault incident involving Nelis and Diane S. He said he remembered telling law enforcement officers that he heard a noise and went to check it out. He said that when he looked in the bedroom, Nelis and Diane S. were together, but he denied that Nelis was on top of Diane S.

¶ 11.   Steve Stone testified that he did not remember telling law enforcement officers that Diane S. was a bloody mess, but said that she was "pretty banged up." He did not remember whether Diane S. was crying or bleeding. On cross-examination, Steve Stone said that he felt pressured to give a statement to the police. He said that someone else wrote out the statement, and that he signed it without reading it. Steve Stone said that he did not want to give a statement to the police because Nelis is his friend, and he did not want to be involved. At the conclusion of Steve Stone's testimony, the court told him that he could "step down."

¶ 12.   The State then called as a witness Tony Williams (Williams), a sheriff's deputy for Ashland County. Williams testified that when he went to Amy Jenson's house to execute a search warrant seeking evidence of a sexual assault, he asked Steve Stone if he would give a written statement. Williams testified that Steve Stone asked Williams to write the statement down for him, because his handwriting was not good.

¶ 13.   After Williams wrote down the statement, he read it back to Steve Stone, who confirmed that the statement was correct, and Steve Stone signed it. Williams then read Steve Stone's statement:

> The night Sam [Nelis] and his girlfriend were here I heard muffled sounds coming from the back bedroom. I went to check on her. She was a bloody mess. I heard scuffling around. She was bloody and crying. When I

turned on the lights everything stopped. I was passed out but the noise from the back room woke me up. The noise was not right.

¶ 14.   The State then called Police Chief Stone to testify. Police Chief Stone testified that he accompanied Williams to the home of Amy Jenson and spoke with Steve Stone about the incident involving Nelis and Diane S. Police Chief Stone said that he did not take a written statement or make a record because Steve Stone was going to give a statement to Williams.

¶ 15.   When the State questioned Police Chief Stone about what Steve Stone had told him, counsel for Nelis objected on hearsay grounds. The prosecutor responded that Steve Stone's statement was an inconsistent statement. The court then told the prosecutor to direct the question to the part of the statement that was inconsistent with Steve Stone's testimony.

¶ 16.   According to Police Chief Stone, Steve Stone said that he heard moaning sounds and then heard Diane S. say "no" and "stop, stop." Steve Stone then went into the bedroom and saw Nelis on top of Diane S., and Diane S. was struggling to get away from Nelis. Steve Stone then saw that Diane S.'s face was bleeding.

¶ 17.   Nelis' counsel then objected to Police Chief Stone's testimony regarding Steve Stone's oral statement on constitutional grounds. He argued that the admission of the statements violated Nelis' right to confrontation under *Crawford,* because Steve Stone was "unavailable," since he testified earlier and could not remember some details of his statement to the police.

¶ 18.   The circuit court ruled that there was no violation of Nelis' right to confrontation because Steve Stone was available for cross-examination, when he had

423

testified earlier in the trial. The court reasoned that Nelis had ample opportunity to ask all the questions that he wanted of Steve Stone.

¶ 19. David Stone, a witness for the defense, offered testimony relevant to the sexual assault charge. David Stone testified that Nelis and Diane S. had been arguing. David Stone said that when the argument ended, Diane S. went to bed, but later came out of the bedroom crying and angry. He testified that Diane S. went back into the bedroom with Nelis, and never said anything about Nelis assaulting her.

¶ 20. Nelis argued at trial that the evidence did not show that he and Diane S. had sexual intercourse on the night at issue. He further argued that, even if they did have sexual intercourse that night, it was consensual.

¶ 21. The jury found Nelis guilty of battery, aggravated battery, and second-degree sexual assault. The circuit court sentenced Nelis to concurrent sentences of two years (one year of initial confinement and one year of extended supervision), six years (four years of initial confinement and two years of extended supervision), and twenty-five years (fifteen years of initial confinement and ten years of extended supervision), on the three counts, respectively.

¶ 22. Nelis filed a post-conviction motion pursuant to Wis. Stat. § (Rule) 809.30, requesting dismissal of the charges against him and a new trial. The circuit court denied Nelis' post-conviction motion. Nelis appealed the circuit court's denial of his post-conviction motion, and argued on appeal that Steve Stone's oral statements should not have been admitted as prior inconsistent statements, and that the admission of those statements violated his right to confrontation,

since Steve Stone was unavailable to testify about the oral statements given to Police Chief Stone.

¶ 23. The court of appeals affirmed the decision of the circuit court and held that the admission of the oral statements did not violate Nelis' Sixth Amendment right to confrontation because Steve Stone testified at trial and was fully available for cross-examination, and that the statements he gave to the police were not presented until after he had given inconsistent in-court testimony. The court of appeals also noted that Nelis' attorney was able to cross-examine Police Chief Stone fully in regard to Steve Stone's prior statements.

¶ 24. Nelis filed a petition for review in this court, and we granted the petition for review. Nelis claims that his right to confrontation under *Crawford* was violated when Police Chief Stone was permitted to testify as to undisclosed oral statements of Steve Stone, under the guise of prior inconsistent statements, after Steve Stone had been excused as a witness.

II

¶ 25. Since Nelis raises the issue of whether his right to confrontation was violated, we must first determine whether the oral statements of Steve Stone, as testified to by Police Chief Stone, were admissible under the rules of evidence in Wisconsin. *State v. Tomlinson*, 2002 WI 91, ¶ 41, 254 Wis. 2d 502, 648 N.W.2d 367.

¶ 26. The question of whether the circuit court erred when it admitted such evidence is subject to an erroneous exercise of discretion standard. *State v. James*, 2005 WI App 188, ¶ 8, 285 Wis. 2d 783, 703 N.W.2d 727; *Martindale v. Ripp*, 2001 WI 113, ¶ 28, 246

Wis. 2d 67, 629 N.W.2d 698. The circuit courts have "broad discretion to admit or exclude evidence[,] . . . [and] we will upset their decisions only where they have erroneously exercised that discretion." *James,* 285 Wis. 2d 783, ¶ 8 (citations omitted).

¶ 27. If Steve Stone's statements were admissible under the rules of evidence, then we must resolve whether the admission of those statements violated Nelis' right to confrontation. *State v. Manuel,* 2005 WI 75, ¶ 25, 281 Wis. 2d 554, 697 N.W.2d 811. Whether the admission of hearsay evidence violated a defendant's right to confrontation presents a question of law, which we review de novo. *Id.* (citing *State v. Weed,* 2003 WI 85, ¶ 10, 263 Wis. 2d 434, 666 N.W.2d 485).

### III

¶ 28. This case really involves evidentiary issues and does not require a detailed analysis of the United States Supreme Court's decision in *Crawford,* 541 U.S. 36. The State argues that Steve Stone's oral statements were not hearsay, but were admissible under Wis. Stat. § 908.01(4)(a) as prior inconsistent statements. Section 908.01(4)(a)[3] provides that a prior inconsistent statement is not hearsay and is admissible if the declarant "testifies at the trial or hearing and is subject to

---

[3] Wisconsin Stat. § 908.01(4)(a) states in relevant part:

(4) Statements which are not hearsay. A statement is not hearsay if:

(a) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

1. Inconsistent with the declarant's testimony, or

cross-examination concerning the statement, and the statement is: (1) inconsistent with the declarant's testimony. . . ."

¶ 29.  Nelis does not argue that Steve Stone's statements were consistent with his earlier testimony at trial, but rather he contends that Steve Stone's oral statements to Police Chief Stone were not admissible as prior inconsistent statements due to the lack of cross-examination, and were not admissible under any of the hearsay exceptions. Nelis asserts that Steve Stone was not subject to cross-examination concerning his oral statements to the police because such statements were not disclosed until Police Chief Stone testified. Nelis argues that Steve Stone was not, "subject to cross-examination" concerning his oral statements and that his statements were, therefore, inadmissible. Wis. Stat. § 908.01(4)(a).

¶ 30.  Nelis further argues that Steve Stone's oral statements were inadmissible under Wis. Stat. § 906.13(2)(a). Section 906.13(2)(a) provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless any of the following is applicable:
>
> 1. The witness was so examined while testifying as to give the witness an opportunity to explain or deny the statement.
>
> 2. The witness has not been excused from giving further testimony in the action.

2. Consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or

3. One of identification of a person made soon after perceiving the person. . . .

3. The interests of justice otherwise require.

¶ 31.   The State argues that Nelis did not object at trial to the admission of the statements on the ground of Wis. Stat. § 906.13(2)(a), and therefore waived that issue. *See State v. Huebner*, 2000 WI 59, ¶ 10, 235 Wis. 2d 486, 611 N.W.2d 727 ("It is a fundamental principle of appellate review that issues must be preserved at the circuit court."). The State contends that Nelis' objection that the oral statements of Steve Stone were hearsay was insufficient to preserve Nelis' claim now that the statements were inadmissible under § 906.13(2)(a). We agree with the State's argument that Nelis' objection to the oral statements was not specific enough to preserve his claim that the admission of Steve Stone's oral statement contravened § 906.13(2)(a). An objection is sufficient to preserve an issue for appeal, if it apprises the court of the specific grounds upon which it is based. *In Interest of Corey J.G.,* 215 Wis. 2d 395, 405, 572 N.W.2d 845 (1998). A general objection that does not indicate the specific grounds for inadmissibility of evidence will not suffice to preserve the objector's right to appeal. *State v. Tutlewski,* 231 Wis. 2d 379, 384, 605 N.W.2d 561 (Ct. App. 1999).

¶ 32.   Further, we are satisfied that Police Chief Stone's testimony regarding Steve Stone's oral statements to the police was not hearsay, since such statements were properly admissible as prior inconsistent statements under Wis. Stat. § 908.01(4)(a). During direct examination by the State, Steve Stone testified that he did not see Nelis on top of Diane S. when he entered the bedroom, and that he did not remember whether Diane S. was crying or bleeding.

428

¶ 33. Police Chief Stone later testified that Steve Stone told him that he had seen Nelis on top of Diane S., and that Diane S. was crying and bleeding. Steve Stone's oral statements given to Police Chief Stone were not hearsay. Rather, the statements were admissible under Wis. Stat. § 908.01(4)(a), because Steve Stone was a testifying witness who testified at trial concerning his statements to the police on the night in question, because he was subject to cross-examination concerning those statements, and because the prior oral statements were inconsistent with his testimony at trial.

¶ 34. During the direct examination of Police Chief Stone, Nelis' counsel objected to the oral statements of Steve Stone on the grounds that the statements were inadmissible pursuant to Wis. Stat. § 908.04(1)(c), claiming that Steve Stone was unavailable, thus not "subject to cross-examination," and that the statement violated Nelis' confrontation right under *Crawford*, 541 U.S. 36. Nelis' counsel did not, however, object on the ground of Wis. Stat. § 906.13(2)(a). We are satisfied that, because Nelis did not object to the admissibility of Steve Stone's oral statements on the ground of § 906.13(2)(a), such argument was waived for failure to state it with sufficient specificity before the circuit court. *State v. Givens*, 217 Wis. 2d 180, 195, 580 N.W.2d 340 (Ct. App. 1998).

¶ 35. Nelis argues that, during pretrial proceedings, he demanded that the State provide any statements of witnesses which it intended to introduce at trial. Nelis claims that the State never disclosed any oral statements by Steve Stone, nor did it summarize any such oral statements in writing.

¶ 36. The State argues that it was not required to disclose to Nelis the oral statements that Steve Stone

429

gave to Police Chief Stone, nor was it required to reduce such oral statements to writing. The State contends that its duty to disclose was limited to the duties listed in the discovery and inspection statute, in this case specifically Wis. Stat. § 971.23, and that Nelis did not expand the State's obligation merely through his discovery demand.

■

¶ 37. We are satisfied that the State complied with its discovery obligations under Wis. Stat. § 971.23. We agree with the State's argument that it was not required by § 971.23 to disclose or to summarize the oral statements of Steve Stone. The only oral statements that the prosecutor was required to summarize and disclose to the defense were the oral statements of the defendant himself, and the names of witnesses to such oral statements. *See* Wis. Stat. § 971.23(1)(b). That discovery statute also requires that the prosecutor disclose "[a]ny relevant written or recorded statements" of a witness it plans to call at trial. Wis. Stat. § 971.23(1)(e). The oral statements of Steve Stone to Police Chief Stone obviously were not written, nor were they recorded.

¶ 38. Furthermore, Nelis was put on notice of the fact that there would be trial testimony about what Steve Stone saw and heard in regard to the alleged sexual assault incident. Steve Stone and Police Chief Stone were both on the State's witness list, which was disclosed to Nelis pursuant to Wis. Stat. § 971.23(1)(d).

¶ 39. Nelis also had notice again of the fact that Steve Stone would testify, and notice of the subject matter of his expected testimony because on the morning of August 23, 2004, the first day of Nelis' trial, the State asked the court for a material witness warrant for the apprehension and appearance of Steve Stone. The

430

State argued that the material witness warrant was necessary because Steve Stone did not appear in court that morning, despite the fact that he had been served with a subpoena. The court inquired about the testimony that Steve Stone was expected to provide, and the prosecutor responded that Steve Stone had given a statement that he had walked into the bedroom during the alleged sexual assault, that he had seen Nelis on top of Diane S., and that Diane S. had been crying and had a bloody face. The court then granted the request for a material witness warrant.

¶ 40. Additionally, in the State's opening statement, counsel for the State told the jury that it would be hearing from a witness who heard Diane S. cry, saw her bleeding, and saw Nelis on top of her. Although the State was not required to disclose the oral statement of Steve Stone, the State's witness list, the hearing on the material witness warrant request for the appearance of Steve Stone, and the State's opening statement all put Nelis on notice that there would be testimony at trial regarding Steve Stone's observations of the alleged sexual assault incident. We are satisfied that, under such circumstances, the State complied with its discovery obligations under Wis. Stat. § 971.23.

■

¶ 41. We next address Nelis' argument that the admission of his oral statements, through Police Chief Stone's testimony, violated his right to confrontation. Under the Confrontation Clauses of the United States and Wisconsin Constitutions, criminal defendants are guaranteed the right to confront the witnesses against them. *State v. Hale,* 2005 WI 7, ¶ 43, 277 Wis. 2d 593, 691 N.W.2d 637; U.S. Const. amend. VI; Wis. Const. art. I, § 7.

431

¶ 42.   Nelis argues that the introduction of the oral statements of Steve Stone, through the testimony of Police Chief Stone, violated his right to confrontation under *Crawford,* 541 U.S. 36 because Steve Stone's statements were testimonial in nature. We agree that his statements were testimonial, since they were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[4]

¶ 43.   The United States Supreme Court stated in *Crawford* that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his [or her] prior testimonial statements." *Crawford,* 541 U.S. at 59 n.9 (citation omitted). The United States Supreme Court did not explain more fully in *Crawford* what it meant by "the declarant appears for cross-examination at trial." *Id.* However, the Court previously stated, in *United States v. Owens,* 484 U.S. 554, 561 (1988), that a witness

---

[4] In *State v. Manuel,* 2005 WI 75, ¶ 37, 281 Wis. 2d 554, 697 N.W.2d 811, we noted that there are three types of testimonial statements:

> (1) "[E]x parte in-court testimony or its functional equivalent— that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially[.]"

> (2) "[E]xtrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions."

> (3) "[S]tatements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

(citing *Crawford v. Washington,* 541 U.S. 36, 51–52 (2004)).

is ordinarily regarded as " 'subject to cross-examination' when he [or she] is placed on the stand, under oath, and responds willingly to questions." The Confrontation Clause guarantees only "an *opportunity* for effective cross-examination . . . not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15 (1985) (emphasis in original).

¶ 44.  Nelis argues that a violation of his right to confrontation under *Crawford* occurred when the State was permitted to use, as evidence, the oral statements of Steve Stone, as conveyed by Police Chief Stone's trial testimony. Nelis asserts that he did not have a prior opportunity to cross-examine Steve Stone concerning his oral statements to Police Chief Stone. He argues that is because the oral statements were not disclosed until Police Chief Stone was called as a witness, after Steve Stone had already testified and was told by the court that he could "step down," and that Steve Stone was not required to remain for possible recall to the witness stand.

¶ 45.  Although Steve Stone testified at trial, Nelis argues that Steve Stone did not have the opportunity to explain or deny his alleged oral statements because the State did not examine him concerning such statements, and the oral statements were not made known prior to Police Chief Stone's testimony. The State argues that there was no violation of Nelis' right to confrontation under *Crawford* because Steve Stone testified at trial and was cross-examined by the defense.

¶ 46.  Nelis' right to confrontation was not violated because "the Confrontation Clause places no constraints at all" on the use of prior testimonial statements when the declarant appears for cross-

433

examination, as did Steve Stone. *Crawford,* 541 U.S. at 59 n.9 (citation omitted).[5] It makes no difference, under the circumstances here, whether the burden is on the State or on Nelis to show that Steve Stone was available for further cross-examination after the court told him he could "step down." Steve Stone testified at trial and was cross-examined concerning his statements to the police; therefore, Nelis' right to confrontation was not violated.

¶ 47. Although it is not necessary to our holding, we note that the record does not establish that Steve Stone was unavailable for further cross-examination after his earlier testimony at trial. He was called as a witness and testified on August 24, 2004. After Steve Stone was subjected to direct, cross, and redirect examination, the court told him that he could "step down." There is nothing in the record indicating the whereabouts of Steve Stone after that. The record certainly demonstrates that Steve Stone had been examined extensively, at trial, about his observations concerning the alleged sexual assault. We are satisfied that the record presented fails to establish that Steve Stone was unavailable, so that he could not have been recalled to testify again about his observations after the testimony of Police Chief Stone.

¶ 48. We are satisfied that there was no violation of Nelis' right to confrontation, since Steve Stone was subject to cross-examination concerning the statements. Steve Stone testified at trial, and Nelis' counsel had a full and fair opportunity to cross-examine him

---

[5] We agree with the concurrence that Nelis' right to confrontation under *Crawford* is not implicated. Concurrence, ¶¶ 53, 73, 80. However, because Nelis raised arguments concerning *Crawford* in his briefs and at oral argument, we address those arguments here.

about his observations and his statements to the police, as well as the opportunity to cross-examine Police Chief Stone regarding Steve Stone's oral statements to the police. On cross-examination, Nelis' attorney asked Steve Stone questions about his statements to police on the night of the alleged sexual assault incident. These facts, combined with the fact that the record does not establish that Nelis was unavailable for recall to the stand, satisfy us that there was no violation of Nelis' right, under the United States and Wisconsin Constitutions, to confront the witnesses against him. U.S. Const. amend. VI; Wis. Const. art. I, § 7.

## IV

¶ 49. This is a review of an unpublished per curiam decision of the Court of Appeals, affirming the decision of the Ashland County Circuit Court, which entered a judgment of conviction following a jury trial against Samuel Nelis as a repeat offender, on one count each of battery, aggravated battery, and second-degree sexual assault by use of force.

¶ 50. We hold that the oral statements of Steve Stone were properly admitted as prior inconsistent statements of a witness in accord with Wis. Stat. § 908.01(4)(a), and that the State was not required to disclose such oral statements in advance. We further hold that Nelis' right to confrontation as explained in *Crawford* was not violated because Steve Stone testified at trial about the sexual assault incident and his statements to the police, and was subject to cross-examination concerning those statements. The record does not establish that he became unavailable for recall to the stand after he testified.

¶ 51. *By the Court.*—The decision of the court of appeals is affirmed.

¶ 52. ANN WALSH BRADLEY, J. (*concurring*). I agree with the majority that under Wis. Stat. § 908.01(4)(a), Steve Stone's oral statements to Chief Stone are admissible because they are not hearsay. I part ways with the majority, however, because it misapplies that rule of evidence by ignoring an essential part of the text. Rather, applying the plain words of the entire text, I conclude that the statements are admissible because Steve Stone testified at trial and the defendant chose to rest on a record that is insufficiently developed to show any subsequent unavailability.

¶ 53. I also write separately because the majority needlessly addresses the constitutional issue of whether Nelis had the opportunity to cross-examine Steve Stone for the purposes of Nelis' Sixth Amendment right to confrontation under *Crawford v. Washington,* 541 U.S. 36 (2004). Because there is no showing of unavailability, *Crawford* is not implicated in this case. Nevertheless, in the course of its unwarranted analysis, the majority takes an expansive view of when a defendant has had the opportunity to cross-examine, thereby having the effect of narrowing the constitutional right to confrontation afforded under *Crawford.* This case can be, and should be, decided on the rules of evidence alone.

I

¶ 54. Section 908.01(4) excludes several categories of statements from the definition of "hearsay." Among those exclusions are some prior statements by witnesses. The rule provides in relevant part:

908.01(4) Statements which are not hearsay. A statement is not hearsay if:

(a) Prior statement by witness. The declarant tes-

tifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

    1. Inconsistent with the declarant's testimony . . . .

¶ 55.   The majority maintains that Steve Stone's oral statements to Chief Stone are not hearsay under § 908.01(4)(a), for three reasons:   (1) because Steve Stone "testified at trial concerning his statements to police on the night in question"; (2) "because he was subject to cross-examination"; and (3) "because the prior oral statements were inconsistent with his testimony at trial." Majority op., ¶ 33.

¶ 56.   It is correct that Steve Stone testified about some of his statements to police and was subject to cross-examination. It is also true that Steve Stone's statements to Chief Stone were inconsistent with his trial testimony. However, the requirement under § 908.01(4) is not simply that the witness be "subject to cross-examination." Rather, it demands that the witness be "subject to cross-examination *concerning the statement*" (emphasis added).

¶ 57.   The fact that Steve Stone was subject to cross-examination about some statements he made to police does not automatically suffice to show that he was "subject to cross-examination concerning" his oral statements to Chief Stone. Here, Nelis did not have the opportunity to cross-examine him regarding his statements to Chief Stone. Nelis had no indication that Steve Stone had made oral statements to Chief Stone, and that the State would seek to introduce such statements at trial.

¶ 58.   The majority maintains that Nelis was "on notice of the fact that there would be trial testimony about what Steve Stone saw and heard in regard to the

437

alleged sexual assault incident." Majority op., ¶ 38. However, the question is whether Steve Stone was subject to cross-examination *concerning his statements to Chief Stone.* Knowing that there would be trial testimony regarding some of Steve Stone's statements does not provide notice of the particular oral statements to Chief Stone that are at issue here, and does not thereby create the opportunity for cross-examination on those statements.

¶ 59. It is important to note that the majority's conclusion that Steve Stone was subject to cross-examination concerning the statements is not based on Nelis having notice that the statements would be introduced. At oral argument, the State acknowledged that the notice argument was not of sufficient strength that it could not "hang its hat" on that argument. Apparently the majority agrees with the State and likewise does not ultimately "hang its hat" on any notice argument.

¶ 60. Instead, the majority bases its conclusion on the facts that (1) Steve Stone "testified at trial concerning his statements to police on the night in question"; (2) Steve Stone "was subject to cross-examination"; and (3) his "prior oral statements were inconsistent with his testimony at trial." Majority op., ¶ 33. Such an analysis totally ignores an essential part of the text of § 908.04(1) that the declarant must be subject to cross-examination "concerning the statement" to Chief Stone.

¶ 61. Being subject to cross-examination concerning just any statements to just any police officer does not comport with the plain language of Wis. Stat. § 908.04(1). I conclude that when Steve Stone was on the witness stand, he was not subject to cross-examination concerning his statements to Chief Stone.

¶ 62. This conclusion is buttressed by an examination of the rules of evidence that address how a

438

witness is to be examined concerning a prior statement under Wis. Stat. § 906.13(2)(a). That rule provides that a witness must be given the opportunity, while testifying, to explain or to deny the statement:

906.13 Prior statements of witnesses.

. . . .

(2)   Extrinsic evidence of prior inconsistent statement of a witnesses.

(a)   Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless any of the following is applicable:

1.   The witness was so examined while testifying as to give the witness an opportunity to explain or deny the statement.

2.   The witness has not been excused from giving further testimony in the action.

3.   The interests of justice otherwise require.

¶ 63.   I am not alone in rejecting the analysis of the majority. Contemplating the fact situation before us, a leading treatise on Wisconsin evidence concludes that for purposes of Wis. Stat. § 908.04(1), a witness is not subject to cross-examination "where the prior statement is never mentioned during the examination of the witness, the witness is then excused from testifying, and the statement is later proffered through extrinsic evidence (i.e., another witness or a document)." 7 Daniel D. Blinka, *Wisconsin Practice: Evidence* 544 (2d ed. 2001). This conclusion by such sound authority further underscores why I cannot embrace the majority's analysis.

## II

¶ 64. Nevertheless, I think that the majority is correct that Steve Stone's oral statements to Chief Stone are not hearsay, and that they are therefore admissible. I conclude that the statements are admissible because Steve Stone testified at trial and the defendant chose to rest on a record that is insufficiently developed to show any subsequent unavailability.

¶ 65. In addressing whether Steve Stone was subject to cross-examination concerning his statements to Chief Stone after Chief Stone's testimony, Nelis now simply asserts that Steve Stone was unavailable, and that Nelis had no prior opportunity to cross-examine him on those statements. Precluding the statements, however, requires more than the mere assertion that the declarant is unavailable, as Nelis does here.

¶ 66. At trial, the only objection raised by Nelis regarding unavailability was based on an assertion that Steve Stone was unavailable due to his lack of memory. Apparently he was unable to recall some of the details of his statements given to the police. Now, however, Nelis raises the argument that Steve Stone was unavailable due to his absence from the trial.

¶ 67. Wis. Stat. § 908.04 sets forth what the record must reflect in order to show "unavailability" for the purpose of admitting out-of-court statements into evidence. It provides in relevant part:

908.04. Hearsay exceptions; declarant unavailable; definition of unavailability.

(1) "Unavailability as a witness" includes situations in which the declarant:

' (a) Is exempted by ruling of the judge on the

ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(b) Persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the judge to do so; or

(c) Testifies to a lack of memory of the subject matter of the declarant's statement; or

(d) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(e) Is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means.

¶ 68. Typically, the party invoking the concept of unavailability will be the proponent of the evidence. This, however, is no typical case. Here the proponent of the statements did not assert unavailability because the prosecution did not believe the witness was unavailable. The statements were offered by the prosecution as prior inconsistent statements, a category that relies on availability. Wis. Stat. § 908.01(4)(a).

¶ 69. Under the circumstances of this case, it appears illogical that the burden of developing the record on *unavailability* is on the party that asserts Stone was *available*. Rather, I conclude that it is the burden of the defense to make a specific enough objection to allow the record to be developed.

¶ 70. Here, there is an evidentiary vacuum. There is no indication in the record that Steve Stone was unavailable for further cross-examination after finishing his testimony, or that any efforts were made to recall him. The record is utterly silent as to where Steve

Stone was after the circuit court told him that he could step down. We note that there is no indication that he was excused from testifying. We do not know if he remained in the courtroom, if he went home and stayed there such that he might have been readily recalled to the stand, or if he disappeared from the face of the earth, making him unavailable.

¶ 71. Likewise, there is no indication in the record that Nelis made any attempt to procure Steve Stone's attendance. Nelis makes no argument that Steve Stone is exempted by privilege, that he would refuse to testify on the subject matter of his statements to Chief Stone, or that he would testify as to lack of knowledge of the subject matter of his statements to Chief Stone. *See* Wis. Stat. § 908.04(1).

¶ 72. We are left with a record that on its face indicates availability. The contention that Steve Stone was not subject to cross-examination concerning his statements to Chief Stone after Chief Stone testified must rest upon the claim that Steve Stone was unavailable. Steve Stone was available prior to Chief Stone's testimony, and there is no indication in the record that Steve Stone became unavailable after Chief Stone's testimony or that Nelis attempted to procure Steve Stone for cross-examination. Thus, Nelis chose to rest on a record that is insufficiently developed to demonstrate any subsequent unavailability. I conclude that because Steve Stone testified at trial and that the record fails to demonstrate any subsequent unavailability, the statements are admissible under § 908.01(4) because they are not hearsay.

III

¶ 73. I would end the inquiry there. Since there is no showing of unavailability, *Crawford* is not impli-

442

cated. *Crawford* applies to the admission of statements from witnesses who are "absent from trial" and unavailable to testify. *Crawford,* 541 U.S. at 59. Even the majority acknowledges that the case is not really about *Crawford.* Majority op., ¶ 28.

¶ 74. Where a case is not really about a constitutional right, then we ought not make determinations about important aspects of that right. It is unwise for courts to unnecessarily address constitutional issues when the case can be disposed of on other grounds. ("Normally this court will not address a constitutional issue if the case can be disposed of on other grounds." *State v. Hale,* 2005 WI 7, ¶ 42, 277 Wis. 2d 593, 691 N.W.2d 637; *see also State v. Manuel,* 2005 WI 75, ¶ 25 n.4, 281 Wis. 2d 554, 697 N.W.2d 811.)

¶ 75. The majority, though, does not end its inquiry. Instead, it engages in an analysis of Nelis' right to confrontation under *Crawford.* However, *Crawford* concerns very different circumstances. Moreover, the majority's discussion appears to needlessly narrow *Crawford.*

¶ 76. In *Crawford,* the state introduced a recorded statement made to police by the defendant's wife. 541 U.S. at 39–40. Because of the marital privilege, the defendant's wife was unavailable to testify at the trial. *Id.* at 40. The Supreme Court determined that the recorded statement was inadmissible. It held that in order for the state to introduce testimonial statements by persons who do not appear at trial, the Sixth Amendment right to confrontation demands that the declarant be unavailable and that the defendant have had a prior opportunity for cross-examination. *Id.* at 68. Thus, the issue in *Crawford* was whether the state could introduce a testimonial statement by a declarant who was unavailable and had not appeared at trial. In

the present case, Steve Stone did appear at trial, and there is no indication in the record that he was unavailable after the court told him that he could "step down." This is therefore not a *Crawford* case.

¶ 77.   Rather than simply noting that this is not a *Crawford* case, the majority concludes that for the purposes of *Crawford,* Nelis had sufficient opportunity to cross-examine Steve Stone regarding his statements to Chief Stone. It cites to a footnote in *Crawford* stating that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his [or her] prior testimonial statements." Majority op., ¶ 43 (citing *Crawford,* 541 U.S. at 59 n.9). Although the majority recognizes that the meaning of "the declarant appears for cross-examination at trial," is unclear, it concludes that Steve Stone's appearance suffices. *Id.,* ¶ 46.

¶ 78.   This conclusion is unwarranted and unnecessary. As earlier noted, Nelis did not cross-examine Steve Stone regarding his statements to Chief Stone because Nelis had no notice that such oral statements would be introduced. More importantly, *Crawford* did not involve a witness who appeared at trial, and it did not contemplate a situation, such as the one here, in which a witness is cross-examined concerning some statements, and in which the State introduces other statements by the witness after the witness steps down. *Crawford* therefore leaves a gap with regard to cases like this one.[1]

---

[1] The majority notes that "a witness is *ordinarily* regarded as subject to cross-examination when he [or she] is placed on the stand, under oath, and responds willingly to questions." Majority op., ¶ 43 (citing *United States v. Owens,* 484 U.S. 554, 561 (1988) (emphasis added) (internal quotations omitted)). It fails to acknowledge, however, that this case may not be "ordinary."

¶ 79. Because the majority takes an expansive view of when a defendant has had the opportunity to cross-examine a declarant under *Crawford,* it has the effect of answering questions that are not before us, thereby narrowing *Crawford.* Specifically, the majority's view would allow the State to introduce Steve Stone's statements to Chief Stone, even if Nelis could demonstrate that Steve Stone was subsequently unavailable,[2] and even where Nelis had no indication that the State would seek to introduce Steve Stone's statements to Chief Stone. I am not certain that admitting the statements under such circumstances would be consistent with Nelis' right to confrontation under *Crawford.*[3] Because that is not the case before us, I would not reach the question.

¶ 80. In sum, I disagree with the majority's conclusion that because Steve Stone was cross-examined, it follows that he was cross-examined concerning his statements to Chief Stone. Rather, I conclude that the statements are admissible under Wis. Stat. § 908.04(1) because Steve Stone testified at trial and Nelis chose to rest on a record that is insufficiently developed to show any subsequent unavailability. Further, I determine that because *Crawford* is not implicated here, the

---

[2] The majority indicates that whether "Steve Stove was unavailable for further cross-examination after his earlier testimony at trial" is "not necessary to our holding." Majority op., ¶ 47. As noted in the text, whether Steve Stone became unavailable after his initial testimony may well impact the proper outcome of the case.

[3] At oral argument, the State conceded that the court of appeals' analysis—the very analysis now embraced by the majority—is inadequate for confrontation purposes. *See State v. Nelis,* No. 2005AP1920–CR, unpublished slip op., ¶ 27 (Wis. Ct. App. May 4, 2006).

majority undertakes an unwarranted constitutional analysis that has the effect of narrowing the constitutional right to confrontation afforded under *Crawford.* Accordingly, I respectfully concur.

¶ 81.   I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this concurrence.