**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 29, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1228-CR**

Cir. Ct. No. **2018CM1193**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SALAR ZANGANA,

DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Milwaukee County: DAVID A. FEISS, Judge. *Affirmed.*

¶1    DUGAN, J.[1]    Salar Zangana appeals from a judgment of conviction for misdemeanor battery and disorderly conduct and from orders of the trial court

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

denying his motion for postconviction relief and his motion for reconsideration. Zangana argues that he is entitled to a new trial because the trial court violated Zangana's right to present a defense when it erroneously excluded a text message in which one of the victims allegedly apologizes for falsely accusing Zangana of domestic abuse. For the reasons set forth below, this court affirms.

## BACKGROUND

¶2 On May 1, 2018, Zangana was charged with two counts of misdemeanor battery and one count of disorderly conduct, all as acts of domestic abuse based on allegations in the complaint that Zangana attacked his wife, Gina, and his daughter, Renee.[2] The case proceeded to a jury trial in March 2019. The jury found Zangana guilty of one count of misdemeanor battery and disorderly conduct. The jury did not reach a unanimous verdict on the remaining count of misdemeanor battery, which resulted in a mistrial on that count.

¶3 During the trial, witnesses testified that Zangana pounded on the side door to the family home, Gina opened the door and let Zangana into the kitchen, and Zangana proceeded to threaten to "kill all of you and put you all on the street."[3] Zangana then grabbed Gina by her hair, choked her, and punched her in the face. When Renee tried to intervene, Zangana grabbed her and began to punch her in the face. Renee ran away, and Zangana tackled her in the living room, where he continued to punch and kick her. Gina pulled Zangana off Renee, and

---

[2] This court uses pseudonyms to protect the identity of the victims pursuant to WIS. STAT. RULES 809.19(1)(g), 809.86(4).

[3] At the time of the incident, Zangana and Gina were separated and undergoing a divorce. Zangana no longer lived at the family home, and Gina was living there with Renee, Renee's other siblings, and Renee's husband.

2

Renee ran outside and called 911. When the police arrived at the house, Gina and Renee were outside on the front lawn and told the police that Zangana was inside and that he had attacked them. The police went inside to investigate, while Gina and Renee remained outside. The police found Zangana sitting on the couch in the living room, took him into custody, and put him in a squad car. The police then took statements from Gina and Renee, took pictures of their injuries, and took pictures of the kitchen and living room where Gina and Renee said Zangana attacked them.

¶4 Gina, Renee, and investigating officers testified during the trial, and the jury was shown the pictures taken by the police from the day of the incident.[4] During Renee's testimony, trial counsel attempted to cross-examine Renee about a text message sent to Zangana in February 2019. The text message, while sent from the phone of Renee's husband, purports to be from Renee, allegedly apologizes to Zangana "for things I did against you," and seeks Zangana's forgiveness, while she was in the hospital about to have a baby.[5] Trial counsel questioned Renee:

---

[4] Gina's testimony was taken with the use of an interpreter because Gina's primary language is Kurdish.

[5] The text message at issue in this appeal is also in Kurdish. It was marked as exhibit 12 during the trial, but it was never admitted into evidence and is not part of the record. Nothing in the record reflects that it was ever translated into English during the trial. However, in support of his postconviction motion, Zangana submitted an affidavit in which he avers that he attached a copy of the text message to that affidavit and averred that:

> My own translation of that message into English is: "Hi Daddy, I am [Renee]. Either tonight or tomorrow I will have a baby. I am sorry and ask your forgiveness for those things I did against you. I am very regretful. I know I was wrong. Please forgive me and free my conscience just in case (in case something goes wrong during childbirth)."

Q     A text message - - were you aware that a text message right immediately about the time of you giving birth was sent from your husband's cell phone to Mr. Zangana's cell phone?

A     I was aware after I was released from the hospital.

….

Q     How did you become aware of that?

A     My husband told me after I was released. I'm sorry. I didn't understand your question.

Q     That's fine. Your husband said, "By the way, I sent that message," correct?

A     Correct.

Q     You and he talked about sending that message beforehand, correct?

A     No, he did not tell me beforehand.

Q     Did he have any - - you've seen the message or you know what the content of that message is, correct?

A     I didn't see the message. I was unconscious in the hospital when he sent the message.

….

Q     Okay. [Renee], your testimony is that you are not the person who sent this text message, correct?

A     Correct.

¶5     The State objected to trial counsel's line of questioning associated with this text message on the grounds that the text message was hearsay. The trial court sustained the objection and added that the marital privilege also protected any communications that Renee and her husband may have had about the text

4

message. Thus, the text message and the related line of questioning was excluded from the trial.[6]

¶6 Following his conviction, Zangana filed a postconviction motion, arguing that the trial court violated his right to present a defense when it excluded the text message and related line of questioning. Specifically, Zangana argued that, had he been able to continue his line of questioning, the text message would have been admissible as a prior inconsistent statement or as extrinsic evidence of a prior inconsistent statement. Zangana additionally argued that any communications between Renee and her husband related to the text message were not covered by the marital privilege because Renee intended for the result of any such communication to be disclosed to her father. Thus, Zangana argues that he should have been able to question Renee regarding the discussions she had with her husband about the text message and should have been able to use the text message to impeach Renee, either by bringing out the contents of the text message through Renee or by calling her husband to testify about the text message.

¶7 The trial court denied Zangana's motion, saying "the court stands by its rulings that (1) the text message was hearsay and (2) the defendant's questions about discussions leading to the text message fell within the auspice of marital privilege." The trial court also found that Zangana forfeited his ability to challenge the admissibility of the text message as extrinsic evidence and failed to

---

[6] In addition to seeking to bring in the text message through Renee's testimony, trial counsel sought to call Renee's husband as a witness and have her husband testify regarding their conversations about the text message and then admit the text message itself as extrinsic evidence of a prior inconsistent statement through the husband's testimony. The trial court denied trial counsel's request for a continuance in order to subpoena Renee's husband, stating that if the issue had been presented, any testimony from Renee's husband was also protected by the marital privilege.

develop, and properly preserve, his ability to challenge the exclusion of the text message and the trial court's denial of his ability to subpoena Renee's husband as a violation of his right to confront the witnesses against him and present a defense. Zangana subsequently filed a motion for reconsideration, which the trial court also denied, and this appeal followed.

## DISCUSSION

### I. Admission of the Text Message

¶8 Zangana renews his arguments that the text message purportedly from Renee, in which Zangana asserts that she apologizes for falsely accusing her father of attacking her and Gina, should have been admitted either as a prior inconsistent statement during Renee's testimony or as extrinsic evidence as a prior inconsistent statement through testimony from Renee's husband. Zangana's arguments fail. The text message itself is hearsay because the "declarant" of the text message is Renee's husband, and Renee's husband did not testify and was not subject to cross-examination. Moreover, any communications that Renee may have had with her husband that could be used to explain the text message or attribute it to Renee as her statement are protected by the marital privilege.

¶9 The circuit court has "broad discretion to admit or exclude evidence," and we review the circuit court's decision to admit evidence for an erroneous exercise of discretion. *State v. Nelis*, 2007 WI 58, ¶26, 300 Wis. 2d 415, 733 N.W.2d 619 (citation omitted).

¶10 For a hearsay statement to be admissible as a prior inconsistent statement, the "declarant" must "testif[y] at trial … and [be] subject to cross-examination concerning the statement." WIS. STAT. § 908.01(4)1.; *see also* WIS.

6

STAT. § 906.13(2)(a). Consequently, the text message's declarant had to be called to testify at trial and be subject to cross-examination. *See Nelis*, 300 Wis. 2d 415, ¶¶32-33. Based on the text having come from the phone of Renee's husband and Renee's testimony that she did not send the text message, Renee's husband, and not Renee, is the declarant. However, Renee's husband was never called to testify, and for this reason alone, the text message cannot qualify as a prior inconsistent statement or as extrinsic evidence of a prior inconsistent statement. Additionally, trial counsel originally sought to introduce the text message through Renee's testimony. Having established that Renee's husband is the declarant, trial counsel could not use the text message as a prior inconsistent statement from Renee because it was not her statement. Thus, the trial court properly exercised its discretion to exclude the text message as hearsay.[7]

¶11 Zangana further argues that the text message is in fact Renee's statement of apology and should be attributed to her as a prior inconsistent statement. In support, Zangana cites *People v. Jones*, 306 P.3d 1136 (Ca. 2013). Even putting aside that *Jones* is not binding precedent on this court, Zangana overlooks that the alleged apology in *Jones* was assumed to be an apology by the court for the purposes of the discussion. *Id.* at 1174. The court ultimately concluded that there was no way to attribute the alleged apology to the victim

---

[7] Additionally, it is debatable whether the text message even qualifies as inconsistent with any of the testimony given at trial. As the State argues, the text message is broad and vague, asking simply for forgiveness "for those things I did against you." This court agrees that it is unclear what the text message refers to, and there is no apparent connection to Renee's trial testimony or any indication that the text message seeks forgiveness for any false accusations about Zangana attacking Renee and Gina. In fact, shortly after the text was sent, Renee appeared for the jury trial and testified, consistent with her statements to the police, that Zangana attacked her and Gina. *See Nelis*, 300 Wis. 2d 415, ¶¶32-33 (noting inconsistency between testimony from a witness who could not remember details of an assault with an earlier statement made to police in which the witness described details of the assault).

because the apology was apparently conveyed by way of members of the victim's church, and there was no evidence that they acted as agents of the victim and with the victim's authority to convey such an apology. *Id.* at 1174-76. The text message here is not readily identifiable as an apology for falsely accusing Zangana of the attack, and there is no evidence that Renee's husband acted as her agent and with any authority to convey any such apology because Renee testified that she had not seen the message before it was sent and did not know of the message until after the fact. Moreover, as noted, Renee's testimony at the trial, which was shortly after the text was sent, that Zangana attacked her and Gina refutes Zagana's assertion that Renee was apologizing to him for falsely accusing him of attacking her and Gina. Consequently, *Jones* is inapposite.

¶12     Further, the content of any communications between Renee and her husband related to the text message, or any supposed regret over falsely accusing Zangana, are also protected by the marital privilege found in WIS. STAT. § 905.05. Thus, the trial court did not erroneously exercise its discretion when it found that trial counsel could not continue the line of questioning with Renee about her conversations with her husband about the text message, have the text message admitted into evidence as prior inconsistent statement of Renee, or call the husband to testify about the text message as an alleged apology from Renee.

¶13     The marital privilege "protects communications between spouses that are private." *Kain v. State*, 48 Wis. 2d 212, 216, 179 N.W.2d 777 (1970). However, "[a] communication between spouses is not 'private' where a third party has access to the same information." *Id.*

¶14     Zangana argues that Renee's communications with her husband are not protected by the marital privilege because the communication is not private as

8

a result of the communication being shared with her father. Zangana misses the point. The text message does not change the fact that any communication between Renee and her husband, assuming a communication took place, is still private because there is no record that Renee had any intention of communicating that text to her father. As Renee testified, she did not see the contents of the text message before it was sent and did not know that her husband sent the text message. Indeed, as Renee testified, she was unconscious in the hospital at the time the text was sent. Thus, any assumed communications remain private and, therefore, protected by the privilege.

¶15    Zangana cites *Wolfle v. United States*, 291 U.S. 7, 14 (1934), saying, "[W]herever a communication, because of its nature or the circumstances under which it was made, was obviously not intended to be confidential, it is not a privileged communication." That is not the case here where there is no record that Renee intended the text be communicated to her father and the limited testimony in the record in fact indicates the opposite to be true. Consequently, Zangana's argument fails.

## II.    Constitutional Violations

¶16    In his postconviction motion and on appeal, Zangana takes his argument that the trial court erroneously excluded the text message a step further and argues that the trial court's ruling violated his right to present a defense and his right to confrontation. This court agrees with the trial court that Zangana's argument on this topic is not only undeveloped, but not properly preserved for appeal. This court thus declines to address his argument any further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (1992) (declining to address undeveloped arguments); *see also State v. Huebner*, 2000 WI 59, ¶10, 235

Wis. 2d 486, 611 N.W.2d 727 ("Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal.").

## CONCLUSION

¶17  In sum, the trial court properly excluded the text message as hearsay and prohibited trial counsel from questioning Renee about any conversations she had with her husband about the text message as those communications were protected by the marital privilege. Accordingly, this court affirms the judgment and orders of the trial court.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.