STATE of Wisconsin, Plaintiff-Respondent,††

v.

David C. TUTLEWSKI, Defendant-Appellant.

Court of Appeals

*No. 98–2551–CR. Submitted on briefs June 29, 1999.—Decided October 13, 1999.*

(Also reported in 605 N.W.2d 561.)

††Petition to review denied.

379

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dianne M. Erickson* of *Wasielewski and Erickson* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sharon Ruhly*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Under Wisconsin law, a witness may not testify that another physically and mentally competent witness is telling the truth.[1] In the present case, David C. Tutlewski contends that this rule was violated when a State's witness testified that the complaining witness and her husband were incapable of lying. We conclude that this testimony was

---

[1] *See State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673, 676 (Ct. App. 1984).

inadmissible because it invaded the province of the jury. We therefore reverse Tutlewski's judgments of conviction and the order denying postconviction relief and remand for a new trial.

## Background

¶ 2. On January 28, 1997, at approximately 7:00 a.m., Tutlewski entered the apartment of Michelle and Jeremy O. while Jeremy was at work. Tutlewski knew Michelle and Jeremy through a mutual friend and he had visited the apartment on previous occasions. Michelle asked him to leave but he refused. Tutlewski then asked her if she would make love to him. She said "no" and told him to leave. When he refused, she attempted to call the police. Tutlewski yanked the telephone from her, slapped her, and then held her down and forcibly had sexual intercourse with her.

¶ 3. Tutlewski was subsequently charged with second-degree sexual assault by use of force contrary to § 940.225(2)(a), STATS., intimidation of a victim contrary to § 940.45(3), STATS., false imprisonment in violation of § 940.30, STATS., and burglary in violation of § 943.10(1)(a) and (2)(d), STATS., each as a repeat offender under § 939.62, STATS.

¶ 4. At trial, Jeremy and Michelle, both of whom are cognitively disabled, testified to the events occurring on January 28, 1997. Following their testimony and over Tutlewski's objection, the State called Charlotte Carver, Michelle and Jeremy's former high school special education teacher. Carver testified that she had been a teacher of the cognitively disabled for twenty-seven years, that she had taught Michelle for two years until her graduation in 1994 and that she had also instructed Jeremy. Carver described the difficulties cognitively disabled persons typically have with lan-

guage and complex ideas and concepts. She explained that Michelle speaks slowly because "she needs extra time to process the information" and that the slow processing time would account for the long pause between questions asked of her and her answers. Carver testified that she got to know Michelle very well because she spent a significant amount of time with her inside and outside the classroom. The State's examination then concluded as follows:

> Q. You said that in your estimation they were good people. Can you tell me this? Do you have an opinion concerning their reputation for truthfulness and honesty?
>
> A. I think both Jeremy and Michelle are very honest, truthful young people, who I think are very naive to the deceitfulness of other people; and *I don't think it is within their capabilities to lie or be deceitful.* [Emphasis added.]

Tutlewski made no objection following Carver's response and he did not cross-examine her.

¶ 5. Tutlewski was found guilty of the charged offenses, except the burglary count. He then sought postconviction relief, arguing that his trial counsel was ineffective for failing to object to Carver's testimony that Michelle and Jeremy were incapable of lying. The trial court denied his motion. Tutlewski appeals.

## Discussion

¶ 6. Tutlewski contends that Carver's testimony should not have been permitted for two reasons. First, Tutlewski argues that the supreme court's recent decision in *State v. Eugenio*, 219 Wis. 2d 391, 579 N.W.2d 642 (1998), precluded Carver from providing an opinion as to Michelle's and Jeremy's character for truthfulness because Tutlewski never asserted that

they were liars in general. Second, he states that Carver's testimony that Michelle and Jeremy were incapable of lying invaded the province of the jury contrary to *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984). Because we conclude that Carver's testimony violated the rule in *Haseltine*, we agree with Tutlewski on the second issue and therefore need not address his first point of error.

## A. Waiver

¶ 7. The State initially claims that Tutlewski waived his objection to Carver's testimony because he did not specifically object to her testimony during trial. We disagree.

¶ 8. Whether a party has raised an objection to the admissibility of evidence sufficient to preserve the issue for appeal is a question of law that we review de novo. *See State v. Peters*, 166 Wis. 2d 168, 174, 479 N.W.2d 198, 200 (Ct. App. 1991). In order to preserve the right to appeal on a question of admissibility of evidence, a defendant must apprise the trial court of the specific grounds upon which the objection is based. *See id.* General objections which do not indicate the grounds for inadmissibility will not suffice to preserve the objector's right to appeal. *See id.* To be sufficiently specific, an objection must reasonably advise the court of the basis for the objection. *See id.*

¶ 9. We are convinced that Tutlewski adequately raised his objection to Carver's testimony. Tutlewski first opposed the State's calling of Carver the day before trial. Tutlewski generally contended that there was no relevancy or basis for Carver's testimony. While no particular grounds were provided, Tutlewski made it known that he would later object to her being called.

¶ 10. At trial and before Carver was permitted to testify, Tutlewski renewed his objection to the State's calling of Carver. Tutlewski maintained that the only reason the State was calling Carver was to bolster Michelle's and Jeremy's credibility, that such testimony was inadmissible under § 906.08, STATS., and that under *State v. Kuehl*, 199 Wis. 2d 143, 545 N.W.2d 840 (Ct. App. 1995), no witness should be permitted to provide an opinion that another mentally and physically competent witness is telling the truth. In *Kuehl*, this court concluded that a party could not question a witness as to the truth of another witness's statements because under *Haseltine*, "No witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." *Kuehl*, 199 Wis. 2d at 149, 545 N.W.2d at 842 (quoting *Haseltine*, 120 Wis. 2d at 96, 352 N.W.2d at 676). Because Tutlewski specifically cites the *Haseltine* rule, albeit as a rule of law under *Kuehl*, and because his appellate argument is conditioned on this very same principle of law, we reject the State's waiver claim.[2]

---

[2] The State's reliance on *State v. Conley*, 141 Wis. 2d 384, 402–03, 416 N.W.2d 69, 76 (Ct. App. 1987), *vacated on other grounds*, 487 U.S. 1230 (1988), is misplaced. There, the defendant raised a *Haseltine* objection for the first time on appeal. Here, however, Tutlewski made his *Haseltine* objection prior to Carver's testimony and in his postconviction motion. *Conley* is clearly distinguishable and, we believe, supports the conclusion that Tutlewski made a timely objection.

## B. *Haseltine*

¶ 11. The central issue we address is whether Carver improperly testified that Michelle and Jeremy were incapable of lying. "The question of whether a witness has improperly testified as to the credibility of another witness is a question of law which we review independently." *State v. Huntington*, 216 Wis. 2d 671, 697, 575 N.W.2d 268, 279 (1998).

¶ 12. We begin our analysis with § 906.08(1), STATS., which provides that "the credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion," with the condition that (1) the evidence only refer to character for truthfulness or untruthfulness, and (2) "evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

¶ 13. In the present case, Tutlewski specifically asked Michelle whether she had lied to her attorney or to police detectives. Michelle replied that she had not. In addition, Tutlewski inquired why she had not told anyone right away that she had been raped and whether she had previously had a sexual relationship with him. Michelle replied that she had been afraid to discuss the sexual assault with anyone and she denied having had a previous romantic relationship with Tutlewski. It is clear that Michelle's character for truthfulness had been attacked and Tutlewski does not dispute this issue on appeal.

¶ 14. Next, *Haseltine* places limits on the type of evidence that may be used to support a witness's character for truthfulness. Most notably, a witness is not permitted to express an opinion as to whether another physically and mentally competent witness is telling

386

the truth. *See Haseltine*, 120 Wis. 2d at 96, 352 N.W.2d at 676. There, a psychiatrist was called as an expert witness in a sexual assault case and testified that there was "no doubt whatsoever" that the complaining witness was an incest victim. *See id.* at 95–96, 352 N.W.2d at 675–76. The court determined that this testimony was inadmissible because a witness's credibility is ordinarily something a lay jury can determine on its own without the help of an expert opinion. *See id.* at 96, 352 N.W.2d at 676. "[T]he jury is the lie detector in the courtroom." *Id.* (quoted source omitted; alteration in original). Because the expert's testimony amounted to an opinion that the victim was telling the truth, his testimony was ruled improper.

¶ 15. In addition to expert witnesses, the *Haseltine* rule has also been applied to lay witnesses. In *State v. Romero*, 147 Wis. 2d 264, 432 N.W.2d 899 (1988), a social worker and a police officer testified to the credibility of a seven-year-old sexual assault victim. When the social worker was asked whether she had formed an opinion as to the victim's character for truthfulness, she responded that the victim "was honest with us from the time of the first interview through my subsequent contact with her." *Id.* at 268, 432 N.W.2d at 901. The police officer similarly testified that the victim "was being totally truthful with us." *Id.* at 269, 432 N.W.2d at 901. In addition, the State remarked in its closing argument that "[t]hey all believed [the victim] in the main to be honest, and with respect to this specific criminal case on these specific criminal charges, they believed her to be telling the truth." *Id.* at 277, 432 N.W.2d at 904. The supreme court concluded that the testimony bolstering the victim's credibility "usurp[ed] the jury's role" because the

jury was no longer free to assess the credibility of the complaining witness. *See id.* at 278, 432 N.W.2d at 905.

¶ 16. To determine whether expert testimony violates the *Haseltine* rule, we examine the testimony's purpose and effect. *See State v. Pittman*, 174 Wis. 2d 255, 268, 496 N.W.2d 74, 79 (1993). Here, the purpose of Carver's testimony was, as the State described at trial, to put Michelle's and Jeremy's testimony "in the proper context" and, in particular, to explain the reason for the long pauses in Michelle's testimony. Also, because Tutlewski had attacked Michelle's and Jeremy's reputation for truthfulness, the State sought to show that they had a strong reputation for truthfulness. The trial court permitted Carver's testimony but noted that while the State did "have the right to present a witness who knows [Michelle and Jeremy] well enough to indicate what their general reputation for truthfulness is," it would not allow the State to ask Carver "any questions whether or not [she] believe[s] another witness is telling the truth." We are satisfied that Carver was called for a proper purpose and note that the trial court's instruction was consistent with *Haseltine*.

¶ 17. As to the effect of Carver's testimony, *Sturdevant v. State*, 49 Wis. 2d 142, 181 N.W.2d 523 (1970), is instructive. There, Sturdevant was charged with criminal trespass and at trial he attempted to inquire whether the State's chief witness was prone to epileptic seizures. The trial court sustained the State's objections to Sturdevant's line of inquiry because Sturdevant failed to explain that he was attacking the witness's credibility or that he was attempting to show how an epileptic condition could affect the credibility of the witness. *See id.* at 147, 181 N.W.2d at 526. While

ultimately affirming the trial court's decision on different grounds, the supreme court stated:

> The mental capacity of a witness is proper to be considered as bearing on [a witness's] credibility. Thus the impaired condition of the mind either from a temporary cause, . . . or other infirmities, is deemed a proper subject of inquiry for the consideration of the jury in determining the credibility of a witness. So it may be shown that the witness has a mind or memory impaired from disease or other cause; but mere mental impairment, without more, is not sufficient to affect credibility . . . .

*Id.* at 148, 181 N.W.2d at 526 (quoted source omitted; first omission in original); 7 DANIEL D. BLINKA, WISCONSIN PRACTICE: EVIDENCE § 607.4, at 285–86 (1991) (when a witness has a mental infirmity, expert medical testimony may be introduced to explain the condition and how it affects the witness's testimony).

¶ 18. Here, unlike in *Sturdevant*, it was the State, not Tutlewski, that presented evidence to explain Michelle's and Jeremy's cognitive disability. Rather than serving to impeach Michelle's and Jeremy's credibility, Carver's testimony sought to bolster their character for truthfulness. While *Sturdevant* permits impeachment of an impaired witness whose ability to perceive events or to tell the truth might be affected, it does not provide a corresponding basis to bolster a witness's testimony if the witness has a mental impairment. Although we believe it was appropriate for Carver to discuss the nature of cognitive disabilities and how such mental impairments affected Michelle's and Jeremy's ability to testify or to recall particular facts, Carver's testimony that Michelle and Jeremy were incapable of lying clearly crossed the line of admissibility articulated in *Haseltine*. Carver's testi-

mony "usurped" the jury's role as fact finder because the jury was no longer free to decide the credibility of Michelle and Jeremy.

¶ 19. In its closing argument, the State attempted to explain away Carver's testimony that Michelle and Jeremy were incapable of telling a lie. The State offered that while Michelle may be capable of creating a simple lie—for example, stating that she had not had a sexual relationship with Tutlewski when in fact she had—she was not "capable of coming up with a lie and then describing it over and over again, describing a sexual assault." Adopting Carver's testimony, the State asserted that Michelle did not have the capacity to tell a "complex lie," that "Michelle and Jeremy . . . have all they can do to tell the truth," that Michelle was "not capable . . . [of a] complex array of things that she would have had to relate again and again and consistently" and that she "simply [was] not capable of it any more than a small child is capable of telling that kind of elaborate lie."

¶ 20. The State's explanation, however, cannot undo Carver's statement that Michelle and Jeremy were incapable of lying. The State, in fact, relied on this opinion in its concluding arguments.

> When you put all of this evidence together, you have to conclude one of two things. Either Michelle . . . is lying about the whole incident or the defendant is, and *Michelle simply isn't capable of that*; and the defendant is. [Emphasis added.]

This assertion by the State, based on Carver's improper testimony, further infected the jury trial.

¶ 21. We are not convinced that the error in admitting Carver's opinion testimony was harmless.

The test for harmless error is whether there is a reasonable possibility that the error contributed to the conviction. *See State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985). The conviction must be reversed unless the court is certain that the error did not influence the jury. *See id.* at 541–42, 370 N.W.2d at 231.

██

¶ 22. Tutlewski's conviction came down to a credibility contest between Michelle and Tutlewski, the only eyewitnesses to the alleged sexual assault. The State maintained that Tutlewski had raped Michelle, but it presented no DNA or medical evidence connecting him to the sexual assault. Although Jeremy testified that Michelle had called him shortly after being raped, Michelle's testimony provided the substance of the sexual assault charge. Tutlewski, on the other hand, claimed that he had been having an affair with Michelle and that he had moved into Michelle and Jeremy's apartment to continue the affair. Tutlewski presented witnesses who testified that Michelle had fabricated the sexual assault charge to conceal their extramarital affair. As the State concedes, Tutlewski presented strong evidence that Michelle had lied about not having had a relationship with him. We must conclude, therefore, that the State's evidence was not so strong that it renders harmless the admissibility of Carver's opinion that Michelle and Jeremy could not lie. We also cannot say that there is no reasonable possibility that the improperly admitted evidence contributed to the verdict.

*By the Court.*——Judgments and order reversed and cause remanded.