STATE of Wisconsin, Plaintiff-Respondent,

v.

Bryan James KRUEGER, Defendant-Appellant.

Court of Appeals

*No. 2007AP2064–CR. Oral argument August 7, 2008.*
*—Decided October 1, 2008.*

2008 WI App 162

(Also reported in 762 N.W.2d 114.)

606

On behalf of the defendant-appellant, the cause was submitted on the briefs of and oral argument by *Bradley J. Lochowicz* of *Seymour, Kremer, Nommensen, Morrissy & Koch, L.L.P.*, Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *J.B. Van Hollen*, attorney general. There was oral argument by *James M. Freimuth*.

Before Brown, C.J., Anderson, P.J., and Neubauer, J.

¶ 1. NEUBAUER, J. Bryan J. Krueger appeals from his conviction of first-degree sexual assault of a child contrary to WIS. STAT. § 948.02(1),[1] and an order denying his motion for postconviction relief on the grounds of ineffective assistance of counsel. Krueger contends that his trial counsel was ineffective in failing to object to testimony by a social worker offered in response to the State's request for her opinion on whether the child's testimony was a product of coaching or suggestion. The social worker testified that the child was not sophisticated enough to maintain a fabricated story, and therefore could not have consistently recounted the details of the alleged incident "unless it was something that she had experienced." Because the social worker effectively offered expert opinion testimony that the child was telling the truth, which is impermissible under *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984), we conclude that Krueger's trial counsel was ineffective in failing to object to the testimony. We also conclude that Krueger was prejudiced by counsel's failure. We reverse the judgment of conviction and the order denying Krueger's motion for postconviction relief.[2] We remand for a new trial.

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] Krueger raises additional challenges to trial counsel's performance including: (1) counsel's failure to object to the complainant's mother's testimony vouching for the child's credibility; (2) counsel's failure to object to the trial court's voir dire of the child before the jury, which had the effect of the court vouching for the child's credibility; and (3) counsel's failure to object to the State's closing argument which essentially shifted the burden of proof to the defendant. Krueger also challenged

## BACKGROUND

¶ 2. Krueger was charged with one count of first-degree sexual assault of a child (identified here as S.B.), contrary to WIS. STAT. § 948.02(1). On April 1, 2003, S.B.'s mother reported to the Racine County Human Services department that her seven-year-old daughter S.B. had been sexually assaulted by Krueger on February 15, 2003, at her home where Krueger was staying at that time. On April 28, 2003, S.B. went to the Child Protection Center in Milwaukee for purposes of a forensic and taped interview.

¶ 3. The interview was conducted by Holly Mason, a social worker with the Child Protection Center who testified she had conducted more than 600 interviews of children who may have been physically or sexually abused, mostly girls between the ages of five and nine years old. In the videotaped interview, S.B. stated that Krueger had pulled down her underpants and "[l]icked" her private part with his tongue, which touched her skin. Krueger was arrested on April 29, 2003.

¶ 4. At trial, Krueger's counsel suggested during opening statements that S.B.'s mother may have influenced S.B. to falsely accuse Krueger. Defense counsel stated:

> There was an argument [between Krueger and S.B.'s mother] as to how bills were being paid and what contribution [Krueger] was making to the household and the police were called, and it ended up being [that Krueger and S.B.'s mother's boyfriend], who were friends, left.

the trial court's exercise of its sentencing discretion. In light of our decision, we need not discuss these additional issues. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only the dispositive issue need be addressed).

Defense counsel observed that S.B. had not told her mother about the assault. Rather, S.B.'s mother confronted S.B. and asked her directly "did [Krueger] ever touch you in your private parts. The child never came to the mother and said anything." Defense counsel also commented on the amount of time that passed between the dates of the alleged assault, the disclosure to S.B.'s mother, the disclosure to the police, and the videotaped interview.[3]

¶ 5. S.B. was the first witness to testify at trial, following the viewing of her videotaped interview at the Child Protection Center. Following S.B.'s testimony, the State called Mason to the stand. Mason explained that she follows the "Step Wise Guidelines" in conducting interviews, which include evaluating the prospect that the child has been coached or exposed to suggestibility in making the abuse allegation. On direct examination, Mason gave the following testimony without objection:

> Q. In terms of dealing with child—alleged child victims in reporting, is there a concern at least in—I guess in your employment or in the profession of children who are subject to coaching or suggestibility to prompt answers for the interview?
>
> A. Well, I think there's always a concern about that, and what we try to look at when we are doing the interview is the age of the child and the developmental level of the child really speaks to their ability to be able to maintain something like that. If they were—If they were coached to say something, it would be very difficult for most children to be able to maintain that through a series of questions around a particular issue, and you know,

---

[3] Defense counsel noted that the alleged assault occurred on February 15, the initial disclosure to S.B.'s mother was in early March, the disclosure to the police took place on April 2, and the videotaped interview was on April 28.

generally kids, young children, and I said generally I am interviewing kids between five and ten years old or five and nine years old, around that average. Generally those children don't have the sophistication to be able to maintain sophisticated fabrication of something. So we do look for that, and there have been times where I've interviewed children and they've made inconsistencies in their statements and they've not been able to continue through various questions and maintain a particular disclosure that they've made. So we do look for that and we look for alternative possibilities also.

. . . .

Q. Now, when you interviewed [S.B.], did you utilize any methods to determine whether or not she was a product of coaching or suggestibility on anyone's part?

A. Well, other than the methods that I talked about already, just, you know, getting some history in the beginning, talking to the child in the initial phase of the interview process and during the disclosure phase of the interview, various questions that I might ask. I might come to it later in a different style of question and to sort of get a sense of whether I was getting the same kind of responses, and that's sort of how I test out whether children can maintain a consistency.

Q. All right. Based upon that, did you form an opinion as to whether or not [S.B.] was the product of any suggestibility or any coaching?

A. I did not—Yes. I did, and I did not get that.

Q. What is that opinion?

A. I did not get a sense from this child that she demonstrated a level of sophistication that would be able to maintain some sort of fabricated story, for lack of a better way of describing it. She did not appear to me to be highly sophisticated so that she could main-

611

tain that kind of consistency throughout unless it was something that she had experienced.

¶ 6. The jury found Krueger guilty of first-degree sexual assault of a child. On November 15, 2004, Krueger was sentenced to eighteen years' confinement and ten years' extended supervision. Krueger subsequently commenced postconviction proceedings claiming ineffective assistance of counsel and erroneous exercise of sentencing discretion. Following a *Machner*[4] hearing, the trial court denied Krueger's motion. Krueger appeals.

## DISCUSSION

¶ 7. *Standard of Review.* "To prevail on an ineffective assistance of counsel claim, the defendant must show that counsel's actions or inaction constituted deficient performance and that the deficiency caused him prejudice." *State v. Love*, 2005 WI 116, ¶ 30, 284 Wis. 2d 111, 700 N.W.2d 62 (citation omitted); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the defendant must establish that counsel's conduct fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The focus of the inquiry is not on the outcome of the trial, but on "the reliability of the proceedings." *State v. Pitsch*, 124 Wis. 2d 628, 642, 369 N.W.2d 711 (1985).

---

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

The final determinations of whether counsel's performance was deficient and prejudicial are questions of law which this court decides without deference to the trial court. *See State v. Knight,* 168 Wis. 2d 509, 514 n.2, 484 N.W.2d 540 (1992). The question of whether a witness improperly testified as to the credibility of another witness is a question of law we review independently. *State v. Tutlewski,* 231 Wis. 2d 379, 386, 605 N.W.2d 561 (Ct. App. 1999).

¶ 8. Krueger contends that his trial counsel was ineffective in failing to object to Mason's testimony. The State contends that Mason's testimony was admissible expert opinion and that Krueger had "opened the door"[5] to the testimony by suggesting in opening statements that S.B.'s mother had caused S.B. to fabricate the incident. The State posits that even if the testimony were objectionable, its admission into evidence was not prejudicial.

■

¶ 9. *Expert Testimony about Child Coaching or Suggestion.* Pursuant to Wis. Stat. § 907.02, expert

---

[5] The curative admissibility doctrine, commonly referred to as "opening the door," is applied "when one party accidentally or purposefully takes advantage of a piece of evidence that is otherwise inadmissible." *State v. Dunlap,* 2002 WI 19, ¶ 32, 250 Wis. 2d 466, 640 N.W.2d 112. It is not applicable here as there is no challenge to the defense's theory of coaching, i.e., no alleged "opening the door" with inadmissible evidence. The State instead seems to be arguing the relevance or necessity of Mason's testimony under Wis. Stat. § 907.02 to rebut the defense's theory of coaching or suggestion. However, Krueger does not challenge the general admissibility of Mason's testimony or whether it will assist the jury, only that portion which he contends addresses the child's veracity. For reasons discussed herein, we reject the State's argument as applied to that portion of Mason's testimony directly commenting on the complainant's credibility.

testimony is admissible if the witness is qualified as an expert and if the testimony is relevant and will assist the trier of fact in determining an issue of fact.[6] The use of expert testimony involving allegations of sexual assault was addressed in *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984). There we held that no expert should be permitted to give an opinion that another mentally and physically competent witness is telling the truth. *Id.* at 96. An opinion that a complainant was sexually assaulted or is telling the truth is impermissible. *See id.* "The credibility of a witness is ordinarily something a lay juror can knowledgeably determine without the help of an expert opinion." *Id.* "[T]he jury is the lie detector in the courtroom." *Id.* (citation omitted).

¶ 10. In *Haseltine*, the defendant was charged with having sexual contact with his sixteen-year-old daughter. *Id.* at 93. During the trial, the state presented a psychiatrist's testimony concerning the pattern of behavior exhibited by incest victims. *Id.* at 95. The psychiatrist was also permitted to give his opinion that there "was no doubt whatsoever" that the defendant's daughter was an incest victim. *Id.* at 95–96. We held that the expert's opinion testimony "goes too far . . . . The opinion that [the defendant's] daughter was an incest victim is an opinion that she was telling the truth." *Id.* at 96.

---

[6] "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Wis. Stat. § 907.02. The defense has not challenged Mason's qualification to testify as an expert.

¶ 11. Later, in *State v. Jensen*, 147 Wis. 2d 240, 257, 432 N.W. 2d 913 (1988), the supreme court held that the trial court properly exercised its discretion in allowing expert testimony about the typical behavior of child sexual assault victims and whether the specific child complainant exhibits such behavior if the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. WIS. STAT. § 907.02.

¶ 12. Specifically, Jensen challenged a school counselor's testimony that the child's behavior was consistent with that of children who were sexual assault victims. *Jensen*, 147 Wis. 2d at 248–49. Jensen argued that this testimony was tantamount to an expert opinion that the assault occurred and that the complainant was telling the truth about the assault. *Id.* at 249. The court disagreed, concluding that the counselor's "testimony was elicited to explain the context in which [the child] made her allegation, not to prove the child had been assaulted."[7] *Id.* at 250. The court also noted that the reactive behavior/consistency testimony could help juries avoid making decisions based on misconceptions of victim behavior, and to counter the defense's explanation of the complainant's behavior. *Id.* at 252.[8] However, "the expert witness must

---

[7] The complainant first raised the allegations after the counselor, who had concerns that her "acting out" behavior was consistent with the behavior of children who had been sexually abused, approached her about potential abuse. *State v. Jensen*, 147 Wis. 2d 240, 250–52, 432 N.W.2d 913 (1988).

[8] The *Jensen* court looked to *State v. Robinson*, 146 Wis. 2d 315, 333–35, 431 N.W.2d 165 (1988), in which the supreme court approved expert testimony that it was common for victims of sexual assault to be "emotionally flat." *Jensen*, 147 Wis. 2d at 251. The trial court correctly exercised its discretion in admit-

not be allowed to convey to the jury his or her own beliefs as to the veracity of the complainant with respect to the assault." *Id.* at 256–57 (citing *State v. Romero*, 147 Wis. 2d 264, 432 N.W.2d 899 (1988)).

¶ 13. The court stated the counselor was not asked to evaluate whether the victim had been molested, and he did not "explicitly or implicitly conclude that this complainant was a victim of sexual assault." *Jensen*, 147 Wis. 2d at 255. Significantly, the court noted:

> The jury in this case was free to draw its own inferences from [the counselor's] observation that the complainant's behavior was consistent with the behavior of child sexual abuse victims. The jury could have accepted [the counselor's] observation and viewed the consistency as one piece of circumstantial evidence that the assault occurred. Or the jury could have believed the defense's explanations of the complainant's behavior. Or the jury could have ignored the complainant's post-assault behavior altogether and relied on other evidence to determine the guilt of the defendant.

*Id.*[9]

---

ting the challenged testimony because the defendant suggested that the complainant's emotionally flat behavior was inconsistent with her claim of sexual abuse. *Robinson*, 146 Wis. 2d at 335. The supreme court found that this type of "expert opinion is useful for disabusing the jury of common misconceptions about the behavior of sexual assault victims," and to "prevent false assumptions on the part of the factfinder regarding the meaning of the complainant's behavior and does not constitute an opinion about the guilt of the defendant." *Jensen*, 147 Wis. 2d at 251.

[9] The court effectively observed that the prohibition on an expert drawing a final conclusion of truthfulness from the witness's behaviors is not simply splitting hairs. Because of the

¶ 14. In looking to *Haseltine* and its progeny, we acknowledge the State's observation that, while these cases address expert testimony as to typical behaviors of a child sexual assault victim and whether the child complainant exhibits those behaviors, Wisconsin law has not yet addressed the precise question of the admissibility of expert opinion testimony about whether the child's testimony and behavior exhibit signs of coaching or suggestion. We agree with the State that "both logic and precedent support extending *Jensen*" to permit expert testimony on typical signs of whether a child has been coached or evidences suggestibility and whether the complainant child exhibits such signs. Both address behavioral manifestations of external influences or events impacting upon the complainant. However, we disagree with the State that the expert testimony in this case "stops short of an impermissible opinion that the child is telling the truth about the specific allegation."

■

¶ 15. Here, Mason was asked whether she had formed an opinion as to whether or not S.B. "was the product of any suggestibility or any coaching." She responded that she had formed an opinion and "did not get that" from S.B. When asked to elaborate on her opinion, Mason stated:

variability of human nature, no expert could guarantee that all children behave in the same way, or that a child who exhibits a certain behavior has had a certain experience. It is not a foregone conclusion that the jury, after hearing testimony as to (1) typical behaviors of sexual assault victims, and (2) that the child exhibited some or even all of those behaviors, will conclude that (3) the child is a victim of sexual assault. The final conclusion of truthfulness of the complainant's allegations invokes personal observations and lay knowledge of human behavior which, under Wisconsin law, is the exclusive province of the jury.

I did not get a sense from this child that she demonstrated a level of sophistication that would be able to maintain some sort of fabricated story, for lack of a better way of describing it. She did not appear to me to be highly sophisticated so that she could maintain that kind of consistency throughout *unless it was something that she had experienced.* (Emphasis added.)

We agree with the State that testimony about a child's consistency, when coupled with testimony regarding the behavior of like-aged children, could serve a legitimate purpose and be a permissible means of explaining the parameters of the interview, understanding the interview, and rebutting the defense's theory of coaching or suggestion. Signs of coaching or suggestion could fall into the realm of knowledge that is outside that of a lay-person jury.[10]

---

[10] We note that testimony regarding coaching may more readily border on truthfulness, as compared to the analysis of reactive behavior. As one court commented, "while testimony about symptoms commonly exhibited by child victims only indirectly bolsters a child's credibility by circumstantially corroborating the child's story, testimony about manipulation comments directly on the accuracy of the story itself." *Schutz v. State*, 957 S.W.2d 52, 69 (Tex. Crim. App. 1997) (citing *State v. Charboneau*, 913 P.2d 308, 313–14 (Or. 1996)). However, as the State points out, appropriate testimony addresses objective signs or behavior indicative of whether the child's rendition is of the child's own making—whether truthful or not. Without commenting on the applicability in any given case, in addition to patterns of consistency, examples of objective behaviors in assessing coaching or suggestion found in sources identified by the State include the child's ability to supply peripheral details of the alleged incident, the use of language that reflects the word usage of an adult, or the reporting of information not appropriate for the developmental level of the child. *See, e.g., State v. Keller*, 844 P.2d 195, 198 (Or. 1993); Daniel J. Hynan, *Interviewing Children in Custody Evaluations,* 36 FAM. & CONCILIATION CTS. REV. 466, 474 (1998).

¶ 16. However, in assessing that because S.B. was not highly sophisticated she would not have been able to maintain consistency throughout her interview "unless it was something that she experienced," Mason testified that S.B. had to have experienced the alleged contact with Krueger. The testimony was tantamount to an opinion that the complainant had been assaulted —that she was telling the truth. As in *Haseltine*, this testimony simply went too far, and its effect was to usurp the role of the jury in determining credibility. *See Haseltine*, 120 Wis. 2d at 96; *Romero*, 147 Wis. 2d at 278; *Tutlewski*, 231 Wis. 2d at 389–90.[11]

██

¶ 17. We therefore agree with Krueger that counsel's performance was deficient in failing to object to Mason's testimony and that Krueger was prejudiced by counsel's deficient performance. The appropriate measure of attorney performance is reasonableness, considering all the circumstances. *See State v. Brooks*, 124 Wis. 2d 349, 352, 369 N.W.2d 183 (Ct. App. 1985). While trial counsel testified that she had not objected because she viewed Mason's testimony as admissible expert opinion, her view of the law was incorrect. It is well established that an expert witness cannot testify as to the credibility of another witness, and counsel's

---

[11] Although not briefed by the parties, we also caution on remand that, to the extent opinion on the child's developmental sophistication amounts to opinion testimony that this particular child lacks the capacity to lie, it risks running afoul of *State v. Tutlewski*, 231 Wis. 2d 379, 381–82, 605 N.W.2d 561 (Ct. App. 1999) (testimony that the witness and her husband were incapable of lying due to their cognitive ability was inadmissible under *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984)).

failure to object when Mason did so was unreasonable.[12] *Haseltine*, 120 Wis. 2d at 96; *Strickland*, 466 U.S. at 687.

¶ 18. Significant to our determination of performance and prejudice is the fact that S.B.'s account of the sexual assault was not corroborated by independent evidence and, as such, the issue at trial was one of credibility. Krueger's conviction depended on the jury believing S.B.'s testimony. *See Haseltine*, 120 Wis. 2d at 96. Under that circumstance, the expert's opinion, "with its aura of scientific reliability, creates too great a possibility that the jury abdicated its fact-finding role to the psychiatrist and did not independently decide [the defendant's] guilt." *Id.* (concluding that the admission of opinion testimony as to credibility was not harmless error); *see also Romero*, 147 Wis. 2d at 279 (In a one-on-one credibility battle "[t]here is a significant possibility that the jurors . . . simply deferred to witnesses with experience in evaluating the truthfulness of victims of crime."). This possibility gives rise to the reasonable probability that, but for trial counsel's error, the jury would have had a reasonable doubt respecting

---

[12] We reject the State's contention that Mason's testimony was not limited to S.B.'s having "experienced" the alleged contact (oral sex) with Krueger, but instead could refer to S.B. having experienced *witnessing* oral sex through viewing pornography or seeing others engaged in oral sex. In viewing Mason's testimony as a whole, including the fact that S.B. denied other exposures in the interview and Mason effectively denied that S.B. was the product of coaching or suggestibility when she testified that she had formed an opinion and "did not get that," the logical deduction (which the jury surely could have made) was that she was referring to S.B.'s allegations about her contact with Krueger in stating that S.B. "could [not] maintain that kind of consistency throughout *unless it was something that she had experienced.*" (Emphasis added.)

guilt. *Strickland*, 466 U.S. at 695. Because counsel's error is sufficient to undermine our confidence in the outcome of the proceeding, we must find that Krueger was prejudiced. *Id.* at 694.

¶ 19. In reaching our decision, we note that the State's examination of Mason was problematic. After inquiring as to the general characteristics of S.B.'s interview, the State asked Mason whether she had "formed an opinion as to whether or not [S.B.] was the product of any suggestibility or coaching." In asking Mason to elaborate on her opinion as to S.B. specifically, the State essentially invited Mason to draw a conclusion as to the veracity of S.B.'s claims. While opinion testimony regarding the typical signs, symptoms or behavior of a child who is not being coached or manipulated along with testimony that the child in question exhibits none or few of those signs or symptoms may be permissible under Wis. Stat. § 907.02, *Haseltine* and *Jenson* make clear that opinion testimony as to a particular child may not cross the line by including a subjective determination as to the credibility of the complainant. An opinion that the child's allegations are or are not the result of coaching or suggestion is inadmissible, as it does not assist the jury to understand the evidence or determine a fact in issue. The fact-finder jury is as capable as the expert of reaching a conclusion about the complainant's truthfulness, and thus, the jury is solely entrusted to do so.

## CONCLUSION

¶ 20. We conclude that the trial court erred in denying Krueger's motion for postconviction relief on grounds of ineffective assistance of counsel. Mason's testimony violated well established Wisconsin law that no expert should be permitted to give an opinion that

another mentally and physically competent witness is telling the truth, *Haseltine*, 120 Wis. 2d at 96, and therefore should have been objected to by counsel. Because this error undermines our confidence in the reliability of the outcome, we reverse and remand for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

¶ 21. BROWN, C.J. (*concurring*). I write separately to underscore that prosecutors will not be hamstrung by this opinion one iota. The opinion simply means that, while expert evidence regarding coaching or the lack of it is allowable, prosecutors must be careful in how they present it. The key word here is "objective." The questions must be objectively tailored and designed to elicit objective answers. A good starting point for prosecutors would be footnote ten of the majority's opinion. Certainly, prosecutors can tailor an objective, nonleading question about the child's "ability to supply peripheral details of the alleged incident." They can ask about the child's use of language in describing the assault. They can ask about information "not appropriate for the developmental level of the child." There are probably many more objective questions a prosecutor can ask that will get the prosecutor's point across. What the prosecutor cannot do is cross the line by inviting the expert to give her or his opinion about whether the child was coached. In sum, be careful.