DANIEL KELLY, J. (concurring).
¶ 66 I join the court's opinion, except to the extent that it holds the court may not "weigh" evidence when it reviews a petition for discharge from a chapter 980 commitment.
*116 Honoring that proscription, I think, is incompatible with the prescription that "circuit courts are to carefully examine ... those portions of the record they deem helpful to their consideration of the petition, which may include facts both favorable as well as unfavorable to the petitioner." Majority op., ¶ 4. Contrary to the court's conclusion, I believe the 2013 amendments to Wis. Stat. § 980.09(2) not only allow weighing, they require it.
¶ 67 The parts of the statute in which we are immediately interested direct how courts are to review discharge petitions in two important ways. The first addresses the information the court is to examine. The second describes how the court is to analyze that information. This case is here because, in 2013, the legislature amended how the court is to address each of these topics.
¶ 68 As for the first directive, Wis. Stat. § 980.09(2) now says the court may "consider" a large universe of information:
[T]he court may consider the record, including evidence introduced at the initial commitment trial or the most recent trial on a petition for discharge, any current or past reports filed under s. 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supporting documentation provided by the person or the state.
Wis. Stat. § 980.02(2).[1] The court concluded that "[t]he result of a plain reading of 'the court may consider the record' is that courts are free to review everything in the record, no matter whether it is beneficial or detrimental *117 to the petitioner's cause." Majority op., ¶ 27. I agree that the purpose of the "may consider" directive is to identify the information the court is supposed to analyze.
¶ 69 The statute's second directive instructs the court to analyze the information described by the first directive. The purpose of the analysis is to determine what the jury would likely conclude from that information: "If the court determines that the record contains facts from which a court or jury would likely conclude the person no longer meets the criteria for commitment, the court shall set the matter for trial." Wis. Stat. § 980.09(2) (emphasis added).[2] In the prior version of this statute, the standard was different. It used to be that the court would determine whether the petitioner had identified "facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a sexually violent person." Wis. Stat. § 980.09(3) (2011-12) (emphasis added). So our task here was to explain how a reviewing court is supposed to apply the new "would likely conclude" standard to the facts identified by the first directive.
¶ 70 Except we didn't analyze this change at all. Instead, we went back to the first directive to consider what it means to "consider" the record. We concluded it means "examine." I think that's a perfectly suitable synonym for "consider," but neither term addresses itself to the purpose of that scrutiny. To what end is one to examine the evidence? More to the point, what is one to do when the examination reveals that some of the *118 evidence favors the petitioner and some of it does not? Certainly, the instruction that courts are to examine "facts both favorable as well as unfavorable to the petitioner" must mean more than acknowledging that one part of the record is in competition with another. *39 ¶ 71 The statute says the purpose of our examination is to determine what a fact-finder would likely conclude from the evidence of record. The court says nothing about how to conduct this analysis except that we are not to "weigh" the evidence. Majority op., ¶ 28 ("Hager and Carter argue that circuit courts may not weigh the evidence in favor of a discharge petition against the evidence opposed to the petition when determining whether the committed person has met his burden of production. We agree."). Part of the reason the court reached this conclusion is it saw no legislative authorization to do so:
As we held in Arends, if the legislature wanted circuit courts to weigh evidence, it could use appropriate terms of art such as "probable cause" or "preponderance of the evidence" to so indicate. It did not use such terms in previous iterations of Wis. Stat. § 980.09(2), and it did not elect to do so in Act 84, either.
Id., ¶ 28 (internal citation omitted).
¶ 72 I disagree-the legislature did use such a term. In fact, that's the whole point of the newly-formulated second directive. We are supposed to determine whether, based on the evidence of record (both pro and con, according to the court), the fact-finder "would likely conclude" the petitioner no longer meets the criteria for commitment. "Likely" means "probable," one of the very terms the court said indicates a legislative direction to weigh evidence. Webster's Third New International Dictionary 1310 (1986) (defining *119 "likely" in first definition as "of such a nature or so circumstanced as to make something probable").
¶ 73 The other reason the court believes the evidence may not be weighed is a legitimate concern for the petitioner's due process rights. The court says that "allowing circuit courts to weigh the evidence ... shift[s] the burden of persuasion to the committed person to prove he is no longer a sexually violent person." Majority op., ¶ 31 (citation omitted). And "[s]hifting the burden of persuasion for discharge to the committed person is impermissible because to do so would violate the committed person's right to due process." Id. (citation omitted).
¶ 74 But the simple act of weighing, by itself, does not require the committed person to prove he is no longer sexually violent. "Weighing" refers to the process of resolving various elements of evidence that exist in tension. Whether the petitioner must prove he is no longer dangerous is not a function of weighing, but of the standard the weighing must satisfy. If the statute required the court to find that the "weighed" evidence satisfied a "preponderance of the evidence" standard, it would be fair to say the burden had shifted to the petitioner to prove he is no longer dangerous.
¶ 75 But Wis. Stat. § 980.09(2) does not contain that standard. It says, instead, that the court must determine whether the fact-finder would merely be likely to find the petitioner no longer meets the criteria for commitment. As discussed above, "likely" means "probable," and we have a fair amount of experience in evaluating whether a probability warrants a new trial. In the "ineffective assistance of counsel" context, Strickland v. Washington requires a new trial when counsel's performance is both deficient and prejudicial. See 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We measure the "prejudice"
*120 prong of the test by asking whether it is "reasonably probable" that the result of the trial would have been different absent counsel's deficient performance. See id. at 694, 104 S.Ct. 2052. We apply that test even when the claimed deficiency is the failure to introduce helpful evidence or object to harmful evidence. See e.g., *40 State v. Jenkins, 2014 WI 59, ¶¶ 59-61, 355 Wis. 2d 180, 848 N.W.2d 786 (holding "that the failure to call Jones as a witness at trial to give testimony contradictory to that of the State's eyewitness had a reasonable probability of affecting the result of the case" and was, therefore, prejudicial to the defendant); State v. Krueger, 2008 WI App 162, ¶¶ 17-18, 314 Wis. 2d 605, 762 N.W.2d 114 (holding that counsel's deficient performance in failing to object to testimony of a State's witness prejudiced defendant because there was a "reasonable probability that, but for trial counsel's error, the jury would have had a reasonable doubt respecting guilt"); State v. Jeannie M.P., 2005 WI App 183, ¶ 27, 286 Wis. 2d 721, 703 N.W.2d 694 (holding "that trial counsel's failure to investigate and present at trial facts that would cast doubt on the credibility of the State's principal witnesses" produced a "reasonable probability [that] the jury would have acquitted the defendant," thus constituting prejudice).
¶ 76 Conducting the prejudice analysis in each of these cases required the court to evaluate the effect of the disputed evidence on the result of the trial. That is to say, the court had to weigh the evidence to determine whether its inclusion or exclusion would have been likely to bring about a different result. We have never said that the reasonable probability standard requires the defendant to prove the result would be different. He must only demonstrate there is a reasonable probability it would be different. There is *121 no reason we cannot conduct the same analysis here, so long as the standard against which we measure the weighed evidence does not exceed the legislatively prescribed "likelihood."
¶ 77 Therefore, because the legislature amended Wis. Stat. § 980.09(2) to require the court to determine whether the evidence of record demonstrates a likelihood (that is, a reasonable probability) that a fact-finder would find the petitioner no longer meets the criteria for commitment, I conclude that the court is to weigh the evidence of record. And because demonstrating a reasonable probability does not shift the burden of persuasion to the petitioner, I conclude there is no due process violation. For these reasons, I join the court's opinion except with respect to its conclusion that § 980.09(2) prevents the court from weighing conflicting evidence.
¶ 78 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

Prior to 2013, this provision directed the court to consider only a subset of the record. See Wis. Stat. § 980.09(2) (2011-12).

Prior to the 2013 amendments, the court was to determine only whether the petitioner had identified "facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a sexually violent person." Wis. Stat. § 980.09(3) (2011-12).