STATE of Wisconsin, Plaintiff-Respondent,

v.

Marvin J. Moss, Defendant-Appellant.†

Court of Appeals

*No. 03–0436–CR. Submitted on briefs August 22, 2003.— Decided October 1, 2003.*

2003 WI App 239

(Also reported in 672 N.W.2d 125.)

† Petition to review denied 12-16-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *F.M. Van Hecke* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. NETTESHEIM, J.  Marvin J. Moss appeals from a judgment of conviction for second-degree sexual assault of a child contrary to WIS. STAT. § 948.02(2) (2001–02).[1] Moss pled no contest to the charge after the trial court denied his motion to suppress an incriminating statement he gave to the Ozaukee County Social Services Department. In the statement, Moss admitted to having sexual contact with a fifteen-year-old girl, C.S. Moss argued that his statement was coerced by his pastoral counselor, who told Moss that he would report the incident if Moss did not self-report the matter.

¶ 2.  The issue in this case is whether a defendant's incriminating statement improperly coerced by a person who is not a state agent offends constitutional due process such that the statement is inadmissible. We conclude that there is no due process violation where, as in this case, a private citizen coerces a confession from another private citizen and there is no state action or state nexus. We uphold the trial court's order denying Moss's motion to suppress and affirm the judgment.

### FACTS

¶ 3.  On September 14, 2001, the State filed a criminal complaint against Moss alleging that he had sexual contact with a child under the age of sixteen

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version.

contrary to WIS. STAT. § 948.02(2). The probable cause portion of the complaint was based on the following recitals of Detective David G. Guss. On August 29, 2001, Moss contacted the Ozaukee County Social Services Department and reported that he was a pastor at a Lutheran church in the village of Grafton and that on August 3, 2001, he was counseling C.S., a fifteen-year-old member of the congregation, at her home regarding the recent death of her mother. Moss reported that during that visit, he consoled C.S. as she cried, "held her hand and hugged her . . . [and] then began to intentionally touch her breasts." On August 30, 2001, Guss spoke with C.S. who told him that approximately three weeks prior Moss visited her at her home for a conversation regarding her well-being and that during the visit Moss "began to touch her breasts and vagina over her clothing and that she began to touch his penis over his clothing."

¶ 4. Following a preliminary hearing, Moss was bound over for trial. On October 16, 2001, the State filed an information alleging the same charge alleged in the complaint—second-degree sexual assault of a child contrary to WIS. STAT. § 948.02(2).

¶ 5. On January 17, 2002, Moss filed a motion to suppress his statements given to the social services agency and all evidence stemming from those statements on grounds that the statements were involuntary and coerced. In support of his motion, Moss supplied his affidavit stating that approximately one week after the incident with C.S. he sought spiritual counseling and absolution and asked Pastor Will Reichmann if he could recommend a confidential counseling source. Reichmann recommended that Moss contact Steven Fringer at the Pastoral Counselling Center. Moss did so. At their first meeting, Fringer told Moss that he was a

psychologist and minister. According to Moss, Fringer invited him to confess the facts of the incident "in hopes of both spiritual and emotional/mental healing with counseling." Moss did so, believing that his statements to Fringer were confidential and privileged.

¶ 6. At their second meeting, Fringer advised Moss that he was a mandatory reporter[2] and therefore compelled under state law to report Moss's confidences to legal authorities. Fringer urged Moss to self-report and that if Moss would not, then Fringer would do so. Fringer provided Moss with the telephone number of the social services agency and told Moss to place the call from his office. Moss "felt he had been trapped" and was led to believe that "he had no option to minimize the damage to himself and others other than to so report." As a result, Moss self-reported the incident.

¶ 7. On June 18, 2002, the trial court issued a bench decision denying Moss's motion to suppress.[3] The trial court identified the issue as "whether coercive conduct of a private person is sufficient to render a confession inadmissible under the Wisconsin Constitution." The trial court determined that absent any kind of police or governmental involvement, it is not. On September 6, 2002, Moss entered a no contest plea and

---

[2] WISCONSIN STAT. § 48.981 is Wisconsin's mandatory child abuse reporting statute. Section 48.981(2) identifies those persons who are "mandatory reporters."

[3] The transcript of the hearing on Moss's motion to suppress does not indicate that the parties offered any testimony at this proceeding. Instead, after the parties stated their appearances, the trial court immediately proceeded to render its bench decision based upon the briefs previously filed by the parties. Therefore, the only evidentiary material before the trial court was the affidavit Moss provided with his motion to suppress.

was subsequently convicted and sentenced to eighteen months in prison and eight years and six months of extended supervision.

¶ 8.   Moss appeals.

## DISCUSSION

■

¶ 9.   We begin with a number of observations which narrow the issue before us. First, Moss states his issue as follows:   "whether a statement illegally co-erced by a person not a state agent and evidence derived solely by virtue of that statement not otherwise likely to be discovered offends the Due Process Clause of the United States Constitution . . . and the equivalent pro-visions of the Constitution of the State of Wisconsin." Thus, the issue is solely constitutional and does not raise any potential claim that the statement was inad-missible under the Wisconsin rules of evidence.

¶ 10.   Second, Moss concedes that Fringer acted solely in a private capacity and that he was not a state agent.[4]

¶ 11.   Third, both the State and Moss concede that Fringer was not a mandatory reporter pursuant to WIS. STAT. § 48.981(2).[5]

---

[4] We therefore do not address the State's arguments that Fringer was not a state actor.

[5] Fringer does not qualify as a mandatory reporter under any of the categories set out in WIS. STAT. § 48.981(2)(a). As such, he falls into the "catchall" category of persons who "*may*" report suspected child abuse pursuant to para. (2)(c).

¶ 12.   Fourth, we agree with Moss that Fringer's actions amounted to coercion. There is no indication that Moss ever would have reported the incident with C.S. absent Fringer's threats to report.[6]

¶ 13.   Nonetheless, the law is clear that a statement is not involuntary, in violation of a person's Fourteenth Amendment rights, unless it has been obtained by coercive police activity. *State v. Hoppe*, 2003 WI 43, ¶¶ 36–37, 261 Wis. 2d 294, 661 N.W.2d 407 (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986), for the proposition that "[c]oercive or improper police conduct is a necessary prerequisite for a finding of involuntariness"); *see also State v. Clappes*, 136 Wis. 2d 222, 235–36, 239–41, 401 N.W.2d 759 (1987).

¶ 14.   Moss relies on a Colorado Supreme Court case, *State v. Hunter*, 655 P.2d 374, 376 (Colo. 1982), for the proposition that although "no state action is involved in the accused's making an admission of guilt to a private citizen[,] [s]tate action enters the picture, however, when a trial court permits the prosecution at a jury trial to utilize as evidence of guilt a confession which is extracted under circumstances that so overbear the individual's will as to render the statement involuntary . . . ."

¶ 15.   However, the United States Supreme Court expressly rejected Colorado's approach in *Connelly*.

---

[6] In making this determination, we considered the definition of coercion applied in cases involving state action. In *State v. Clappes*, 136 Wis. 2d 222, 235–36, 401 N.W.2d 759 (1987), the court stated that "[t]he presence or absence of actual coercion or improper police practices is the focus of the inquiry because it is determinative on the issue of *whether the inculpatory statement was the product of a 'free and unconstrained will, reflecting deliberateness of choice.'* " (Emphasis added.)

There, the supreme court considered whether the pre-custodial, pre-*Miranda*[7] confession of a mentally ill person, made absent any police misconduct, was involuntary in violation of the Due Process Clause of the Fourteenth Amendment. *Connelly*, 479 U.S. at 159–61. In that case, Connelly had approached a police officer on the street and, without prompting, stated that he had murdered someone and wanted to talk about it. *Id.* at 160. Connelly later stated that "voices" had told him to confess and it was determined that he suffered from chronic schizophrenia and was in a psychotic state at least one day before he confessed. *Id.* at 161.

¶ 16.   Despite finding that the police had done nothing wrong or coercive in securing Connelly's confession, the Colorado trial court found that the statements were involuntary because Connelly's mental illness destroyed his volition and compelled him to confess. *Id.* at 162. The Colorado Supreme Court affirmed, finding in part that "the very admission of the evidence in a court of law was sufficient state action to implicate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.*

¶ 17.   In reversing the decision of the Colorado Supreme Court, the United States Supreme Court turned to the language of the Due Process Clause. "The Due Process Clause of the Fourteenth Amendment provides that no State shall 'deprive any person of life, liberty, or property, without due process of law.' " *Id.* at 163. Examining past confession cases decided by the Court, it concluded that "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* at 164.

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶ 18.   The Court went on to state two principles important to this case:    (1) "[o]ur 'involuntary confession' jurisprudence is entirely consistent with settled law requiring some sort of 'state action' to support a claim of violation of the Due Process Clause of the Fourteenth Amendment"; and (2) "[t]he most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." *Id.* at 165–66. The Court expressly rejected the Colorado approach because "it fails to recognize the essential link between coercive activity of the State, on the one hand, and a resulting confession by a defendant, on the other." *Id.* at 165.

¶ 19.   Based on the Supreme Court's language in *Connelly* and the reliance on that language by Wisconsin courts,[8] we must reject Moss's invitation to find his statement inadmissible on grounds of due process regardless of the absence of state action. While this is the first case in Wisconsin involving the coercion of a confession completely absent of any state involvement, there is no question that *Connelly* extends to such a situation.[9]

---

[8] *See, e.g., Clappes,* 136 Wis. 2d at 235–36, 239–41; *State v. Hoppe,* 2003 WI 43, ¶¶ 36–37, 261 Wis. 2d 294, 661 N.W.2d 407; *State v. Harris,* 189 Wis. 2d 162, 173, 525 N.W.2d 334 (Ct. App. 1994), *aff'd,* 199 Wis. 2d 227, 554 N.W.2d 545 (1996); *State v. Deets,* 187 Wis. 2d 630, 635, 523 N.W.2d 180 (Ct. App. 1994) (citing to *Colorado v. Connelly,* 479 U.S. 157, 167 (1986), for the proposition, "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment.").

[9] We note that in *State v. Kunkel,* 137 Wis. 2d 172, 192, 404 N.W.2d 69 (Ct. App. 1987), released shortly after the United

██

¶ 20. In reaching our decision, we acknowledge Moss's reliance on a Hawaii Supreme Court case, *State v. Bowe*, 881 P.2d 538, 542 (Haw. 1994), which states, "[A]dmitting coerced confessions, no matter who coerced them, is fundamentally unfair." The decision also cites to law review articles criticizing the *Connelly* holding. We are also mindful of the dissent in *Connelly* which complains that the Court's decision "restricts the application of the term 'involuntary' to those confessions obtained by police coercion. Confessions by mentally ill individuals or persons coerced by parties other than police officers are now considered 'voluntary' " and that "[t]he Court's failure to recognize all forms of involuntariness or coercion as antithetical to due process reflects a refusal to acknowledge free will as a value of constitutional consequence." *Connelly*, 479 U.S. at 176 (Brennan & Marshall, JJ., dissenting). However, we are bound by the decisions of the United States Supreme Court on matters of federal law. *State v. Jennings*, 2002 WI 44, ¶ 18, 252 Wis. 2d 228, 647 N.W.2d 142.

██

¶ 21. Our rejection of Moss's constitutional due process claim does not render statements such as these automatically admissible. Rather, as the *Connelly* Court

---

States Supreme Court decision in *Connelly*, we declined to find involuntariness when the defendant confessed to a priest outside the presence of police officers. Although the police had suggested that the defendant speak to a priest, the court found no evidence of coercion given that the police had not asked the priest for assistance. *Kunkel*, 137 Wis. 2d at 179, 192. The court cited to *Connelly* for the proposition that "[f]or purposes of due process analysis under the fifth and fourteenth amendments, involuntariness requires police coercion." *Kunkel*, 137 Wis. 2d at 179, 192.

recognized, the Constitution leaves "sweeping inquiries into the state of mind of a defendant who has confessed, inquiries quite divorced from any coercion brought to bear on the defendant by the State" to be resolved by state laws governing the admission of evidence and erects no standard of its own in this area. *Connelly*, 479 U.S. at 166–67. Thus, "[a] statement rendered by one in the condition of [Connelly] might be proved to be quite unreliable, but this is a matter to be governed by the evidentiary laws of the forum, and not by the Due Process Clause of the Fourteenth Amendment." *Id.* at 167 (citation omitted). Therefore, given the coercive effect of Fringer's actions, Moss could have availed himself of Wisconsin's rules of evidence to challenge the reliability of his statement. *See, e.g., Boyer v. State*, 91 Wis. 2d 647, 662, 284 N.W.2d 30 (1979) (a trial court has the authority to exclude a statement pursuant to Wis. Stat. § 904.03 where the statement is "so unreliable that its probative value is substantially outweighed by the danger of prejudice and confusion").

## CONCLUSION

¶ 22.   We conclude that the coercive conduct of a private person, absent any claim of state involvement, is insufficient to render a confession inadmissible under the Due Process Clause of the United States Constitution and the equivalent provisions of the Wisconsin Constitution. We therefore conclude that the trial court properly denied Moss's motion to suppress. We affirm the judgment.

*By the Court.*—Judgment affirmed.