STATE of Wisconsin, Plaintiff-Respondent,

v.

Marvin L. BEAUCHAMP, Defendant-Appellant.†

Court of Appeals

*No. 2009AP806–CR. Submitted on briefs January 5, 2010.
—Decided February 2, 2010.*

**2010 WI App 42**

(Also reported in 781 N.W.2d 254.)

† Petition to Review pending.

165

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Craig S. Powell* of *Kohler & Hart, LLP*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Maura FJ Whelan*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Marvin L. Beauchamp appeals the judgment entered after a jury found him guilty of first-degree intentional homicide while armed. *See* Wis. Stat. §§ 940.01(1)(a) & 939.63. He also appeals the trial court's order denying his motion for postconviction relief. He claims that the trial court erroneously admitted as dying declarations the victim's assertions that Beauchamp shot him, and that his due-process rights were violated because the trial court received as sub-

166

stantive evidence prior inconsistent statements by two of the State's witnesses. We affirm and discuss these contentions in turn.

## I. Dying Declarations.

¶ 2.   Beauchamp was convicted of shooting Bryon T. Somerville to death. According to the testimony of the assistant medical examiner who performed the autopsy, Somerville "had five gunshot wounds." Two persons testified that after he was shot, Somerville told them that Beauchamp did it—Marvin Coleman, an emergency medical technician with the Milwaukee Fire Department, and Wayne Young, a Milwaukee police officer. The trial court held that Somerville's assertions that Beauchamp shot him were admissible under WIS. STAT. RULE 908.045(3) as Somerville's dying declarations, and were not barred by Beauchamp's right to confront witnesses testifying against him.

### A.   *The Testimony.*

¶ 3.   Coleman, who had known Somerville before he was sent to the shooting scene as part of his duties with the fire department, told the trial court that he went over to where Somerville was lying on the street and asked him who had shot him. Somerville replied "Big Head Marvin." No one on this appeal disputes that this was a reference to Beauchamp. Somerville also beseeched Coleman "three or four times," "Marv, please don't let me die." Coleman responded by telling Somerville "we're going to do the best we can. We are not going to let you die." Based on his sixteen-year career and having responded to between thirty and forty shootings, Coleman said he believed that Somerville's condition was "grave" when he saw him on the ground.

167

¶ 4.   Coleman drove Somerville in an ambulance to Froedtert hospital, where he died. On the way to the hospital, two other paramedics worked on Somerville trying to save his life. Coleman told the trial court that Somerville was upset when they passed St. Joseph's hospital on the way to Froedtert:   "He wanted to — he was just saying why are we not going to St. Joe's." Young was also in the back of the ambulance with Somerville while the paramedics worked on him.

¶ 5.   Young testified that Somerville was in pain during the ambulance ride and said that "he couldn't breathe." He also testified that Somerville kept repeating "that a guy named Marvin shot him," and that these assertions were not in response to any questions. Young explained that although he wanted to ask Somerville questions in the ambulance on the ride to the hospital, "the ambulance person was trying to work on him while he was saying all this" and that Young "didn't get a chance to talk to [Somerville] until we got to the hospital itself."

¶ 6.   Once they got to the hospital, Young asked Somerville "a couple of questions" and Somerville, still "complaining of pain," again indicated that the person, whom everyone on this appeal agrees is Beauchamp, shot him. Coleman also related what happened at the hospital. He testified that while they were in Somerville's hospital room, one of the doctors who were trying to save Somerville's life got the results of an analysis of Somerville's blood and said, so that, according to Coleman, Somerville could probably hear, "this is not good, this is not good," telling Coleman that "[Somerville's] blood is poisoned." Coleman testified that the doctor then said to Young, "if you have any questions to ask him, you need to ask him now because he's not going to make it." At some point, although the

Record is not clear when, Young asked Somerville at the hospital who had shot him and Somerville again said that it was "a guy named Marvin." The medical personnel intubated Somerville to help him breathe, and Somerville then "lost consciousness." Although he was revived, he did not survive surgery. At no point, either in the ambulance or at the hospital, did Somerville ever say that he believed that he was going to die as a result of his wounds, and no one told him that, other than, perhaps, his ability to hear what the doctor said when he saw the results of Somerville's blood analysis.

¶ 7. As we have seen, the trial court ruled that Somerville's assertions about who shot him were admissible as dying declarations and were not barred by Beauchamp's right to confrontation. Our standard of review is mixed. Whether an assertion qualifies as a dying declaration, that is, whether it is admissible under the evidentiary rule, is within the trial court's discretion; whether dying declarations pass constitutional muster is a matter of law that we assess *de novo*. *See State v. Jensen*, 2007 WI 26, ¶ 12, 299 Wis. 2d 267, 277, 727 N.W.2d 518, 523; *State v. Manuel*, 2005 WI 75, ¶ 3, 281 Wis. 2d 554, 562, 697 N.W.2d 811, 815 (whether an assertion is within an exception to the rule against hearsay is a matter within the trial court's discretion) ("recent perception"). "An appellate court will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." *State v. Sullivan*, 216 Wis. 2d 768, 780-781, 576 N.W.2d 30, 36 (1998).

## B. *The Rule.*

¶ 8.    Ordinarily, of course, out-of-court assertions may not be used for their truth at a trial by virtue of the rule against hearsay. WIS. STAT. RULES 908.01 & 908.02. One exception to the rule against the admission of hearsay is the dying declaration, codified in WISCONSIN STAT. RULE 908.045(3): "A statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be the declarant's impending death." Under established law, a person whose assertion is sought to be used at trial need not specifically say that death is imminent. Rather, "belief of impending death may be inferred from the fact of death and circumstances such as the nature of the wound." Judicial Council Committee Note, 1974, WIS. STAT. RULE 908.045(3), 59 Wis. 2d R1, R317 (1973); *see also Oehler v. State,* 202 Wis. 530, 534, 232 N.W. 866, 868 (1930), cited by the note, and *Richards v. State,* 82 Wis. 172, 179, 51 N.W. 652, 653 (1892) (knowledge of impending death permissibly inferred when declarant *in extremis* and was aware of that) (apparently no specific statement acknowledging impending death). The law elsewhere is the same. Belief of impending death "may be made to appear from what the injured person said; *or* from the nature and extent of the wounds inflicted being obviously such that he must have felt or known that he could not survive." *Mattox v. United States,* 146 U.S. 140, 151 (1892) (emphasis added); *United States v. Mobley,* 421 F.2d 345, 347–348 (5th Cir. 1970) (declarant need not say that he or she is aware of impending death when circumstances permit that inference) (following

170

*Mattox*); *United States v. Peppers*, 302 F.3d 120, 137–138 (3rd Cir. 2002) (following *Mattox*).

■

¶ 9.   As noted, the determination of whether evidence should be admitted under a particular rule is vested in the trial court's discretion. In light of the circumstances surrounding Somerville's injuries, his frantic concern that he not die as expressed to Coleman, his being upset when the ambulance passed one hospital on its way to another, and his significant pain and breathing difficulties, coupled with his spontaneous repeated assertions as to who shot him, the trial court did not erroneously exercise its discretion in ruling that Somerville's fingerings of Beauchamp as his shooter were dying declarations under WIS. STAT. RULE 908.045(3) irrespective of whether Somerville implicated Beauchamp before or after he may have heard the physician's assessment of the blood analysis. Indeed, Beauchamp's trial lawyer conceded that it was "clear that he [Somerville] could have believed he was going to die." We now turn to whether receipt of those dying declarations violated Beauchamp's right to confrontation.

C.   *Confrontation.*

■ ■

¶ 10.   "The Confrontation Clause of the United States and Wisconsin Constitutions guarantee criminal defendants the right to confront witnesses against them." *Jensen*, 2007 WI 26, ¶ 13, 299 Wis. 2d at 277, 727 N.W.2d at 523 (internal quotes and quoted sources omitted). "We generally apply United States Supreme Court precedents when interpreting these clauses." *Id.*, 2007 WI 26, ¶ 13, 299 Wis. 2d at 278, 727 N.W.2d at

171

523–524. The confrontation right applies to statements that are "testimonial," *Davis v. Washington*, 547 U.S. 813, 821 (2006), and we assume, as do the parties, that Somerville's dying declarations are "testimonial" within the ambit of a defendant's right of confrontation.

■

¶ 11. Not every testimonial out-of-court assertion, however, is barred by the right to confrontation. Thus, the Sixth Amendment's guarantee of the confrontation right does not apply "where an exception to the confrontation right was recognized at the time of the founding." *Giles v. California*, 554 U.S. ___, ___, 128 S. Ct. 2678, 2682 (2008). Accordingly, if dying declarations were recognized as an exception to the confrontation right at the founding of our Republic, Beauchamp's constitutional right to confrontation was not trampled by the admission of Somerville's dying declarations implicating him as the shooter. *See ibid.* Dying declarations were so recognized:

> We have previously acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted. *See [Crawford v. Washington*, 541 U.S. 36] at 56, n. 6, 62 [(2004)]. The first of these were declarations made by a speaker who was both on the brink of death and aware that he was dying. *See, e.g., King v. Woodcock*, 1 Leach 500, 501–504, 168 Eng. Rep. 352, 353–354 (1789); *State v. Moody*, 3 N.C. 31 (Super. L. & Eq. 1798); *United States v. Veitch*, 28 F. Cas. 367, 367–368 (No. 16,614) (CC DC 1803); *King v. Commonwealth*, 4 Va. 78, 80–81 (Gen. Ct. 1817).

*Giles*, 554 U.S. at ___, 128 S. Ct. at 2682–2683. *Crawford*, of course, was the watershed decision rejecting the balancing approach of *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), in favor of a flat-out application of the Sixth

172

Amendment's guarantee of the confrontation right for testimonial assertions. *Crawford*, 541 U.S. at 68–69 ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.").

¶ 12. Although the *Giles* analysis we have quoted could be viewed as *dictum*, it was a deliberate recognition of the Sixth Amendment's reach, given *Giles*'s further analysis of the pre-founding cases it cited, *see id.*, 554 U.S. at ___, 128 S. Ct. at 2684–2686, and because *Crawford* had previously left the matter open, *Crawford*, 541 U.S. at 56 n.6. Thus, we view *Giles*'s pronouncement as to whether the confrontation clause governs dying declarations as binding. *See State v. Holt*, 128 Wis. 2d 110, 123, 382 N.W.2d 679, 686 (Ct. App. 1985) ("When an appellate court intentionally takes up, discusses and decides a question germane to a controversy, such a decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision."). Indeed, we are unaware of any post-*Crawford* court rejecting what *Giles* recognized as the dying-declaration exception to the confrontation clause. *See, e.g., State v. Lewis*, 235 S.W.3d 136, 148 (Tenn. 2007) ("Since *Crawford*, we found no jurisdiction that has excluded a testimonial dying declaration."). Receipt into evidence of Somerville's dying declarations did not violate Beauchamp's right to confrontation.[1]

---

[1] The rationale for receipt of the dying declaration as an exception to the rule against hearsay is that it is assumed that no person will leave life with a lie on the lips. *See Idaho v. Wright*, 497 U.S. 805, 820 (1990). Beauchamp argues, however, that whatever validity that assumption might have had in the

## II. Prior inconsistent statements.

¶ 13. Beauchamp claims that he was denied due process by the receipt, as substantive evidence, of statements given to the police by two persons who were present at Somerville's murder that were inconsistent

era when the dying-declaration rule was first adopted, it has lost much of its vitality today. Thus, Beauchamp contends that the "rationale ignores other motivations that might be just as powerful, such as bias or the desire for revenge, and the organic changes attendant to traumatic injuries that can affect the brain and the victim's abilities to accurately perceive, recall, and recount what has occurred." This contention, however, ignores two things. First, the dying-declaration exception to the rule against hearsay is specifically recognized by WIS. STAT. RULE 908.045(3), and, as we explain in the main body of this opinion, the dying declaration is an exception to the right of confrontation. Second, a defendant who contends that the infirmities to which Beauchamp refers affect a dying-declaration's credibility may have the factfinder make that assessment by virtue of WIS. STAT. RULE 908.06, which provides:

> When a hearsay statement has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

Further, WIS. STAT. RULE 904.03 permits the trial court to exclude a dying declaration under the balancing permitted by that rule: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

174

with their trial testimony, even though they were cross-examined by Beauchamp at the trial. Under WIS. STAT. RULE 908.01(4)(a)1, a statement by a witness that is inconsistent with that witness's trial testimony is not hearsay so long as the witness "is subject to cross-examination concerning the statement."[2] All of the statements were given to the police either on the day Somerville was shot or on the next day. Both witnesses acknowledged not only that they told the police what was received into evidence as their prior inconsistent statements but also affirmed that they had signed written reifications of those statements. The witnesses' trial testimony tended to exculpate Beauchamp, while some of what they told the police tended to inculpate him as the person who shot Somerville. The jury, of course, was able to assess the witnesses' trial testimony and what they had previously told the police, and presumptively did so in reaching its verdict.

¶ 14. Apparently recognizing both that prior inconsistent statements of witnesses who are subject to cross-examination are admissible as non-hearsay under WIS. STAT. RULE 908.01(4)(a)1 and that receipt of such statements does not violate a criminal defendant's right to confrontation, *see State v. Nelis*, 2007 WI 58, ¶¶ 41–46, 300 Wis. 2d 415, 431–434, 733 N.W.2d 619, 627–628 (post-*Crawford*); *State v. Rockette*, 2006 WI App 103, ¶¶ 18–27, 294 Wis. 2d 611, 623–628, 718 N.W.2d 269, 275–277 (post-*Crawford*), Beauchamp argues that his due-process rights were violated under the

[2] As material, WIS. STAT. RULE 908.01(4) provides: "A statement is not hearsay if: (a) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: 1. Inconsistent with the declarant's testimony." (Formatting altered.)

guidelines adopted by *Vogel v. Percy*, 691 F.2d 843, 846–848 (7th Cir. 1982). The *Vogel* guidelines require the consideration of the following circumstances in assessing whether the receipt of a witness's prior inconsistent statements as substantive evidence violates the due-process rights of a defendant in a criminal case:

> (1) the declarant was available for cross-examination; (2) the statement was made shortly after the events related and was transcribed promptly; (3) the declarant knowingly and voluntarily waived the right to remain silent; (4) the declarant admitted making the statement; and (5) there was some corroboration of the statement's reliability.

*Id.*, 691 F.2d at 846–847. Beauchamp's trial lawyer, however, never objected to the receipt of the witnesses' prior inconsistent statements on *Vogel* grounds, and, accordingly, Beauchamp's contention that his due-process rights were violated are assessed by us in the context of whether Beauchamp was denied effective assistance of trial counsel. *See Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) (unobjected-to error must be analyzed under ineffective-assistance-of-counsel standards, even when error is of constitutional dimension); *State v. Carprue*, 2004 WI 111, ¶ 47, 274 Wis. 2d 656, 678, 683 N.W.2d 31, 41–42 (in the absence of an objection we address issues under the ineffective-assistance-of-counsel rubric); *State v. Ellington*, 2005 WI App 243, ¶ 14, 288 Wis. 2d 264, 278, 707 N.W.2d 907, 913–914 (confrontation).

■

¶ 15. To establish ineffective assistance of counsel, a defendant must show: (1) deficient performance; and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, a

defendant must point to specific acts or omissions by the lawyer that are "outside the wide range of professionally competent assistance." *Id.*, 466 U.S. at 690. Further, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam); *see also id.*, 540 U.S. at 11 (lawyer need not be a "Clarence Darrow" to survive an ineffectiveness contention).

¶ 16.   To prove prejudice, a defendant must demonstrate that the lawyer's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *Strickland*, 466 U.S. at 687. Thus, in order to succeed on the prejudice aspect of the Strickland analysis, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694. We need not address both deficient performance and prejudice if the defendant does not make a sufficient showing on either one. *Id.*, 466 U.S. at 697. Beauchamp has not shown that his trial lawyer gave him deficient representation by not asserting the federal *Vogel* decision as a potential bar to the receipt into evidence of the witnesses' prior inconsistent statements.

¶ 17.   On federal questions, Wisconsin courts are bound only by the decisions of the United States Supreme Court. *State v. Moss*, 2003 WI App 239, ¶ 20, 267 Wis. 2d 772, 781, 672 N.W.2d 125, 130; *McKnight v. General Motors Corp.*, 157 Wis. 2d 250, 257, 458 N.W.2d 841, 844 (Ct. App. 1990) (decisions of the Seventh

177

Circuit are not precedent in Wisconsin state courts). We have found no published Wisconsin appellate decision that even cites *Vogel*, no less adopts its five guideline factors. Thus, the trial court was not bound by the *Vogel* guidelines, and, of course, neither are we.[3]

■

¶ 18.   Under Wisconsin law as it existed during Beauchamp's trial in October of 2006, and as it exists today, the prior inconsistent statements of a witness in a criminal case were and are admissible so long as the witness was subject to cross-examination on the matter. *See Rockette*, 2006 WI App 103, ¶¶ 18–27, 294 Wis. 2d at 623–628, 718 N.W.2d at 275–277 (decided May 31, 2006); *Nelis*, 2007 WI 58, ¶¶ 41–46, 300 Wis. 2d at 431–434, 733 N.W.2d at 627–628. Beauchamp's trial lawyer had no *Strickland* responsibility to either seek a change in Wisconsin law or lay a fact-predicate to try to precipitate that change. *See State v. Maloney*, 2005 WI 74, ¶¶ 28–30, 281 Wis. 2d 595, 609–611, 698 N.W.2d 583, 591; *State v. McMahon*, 186 Wis. 2d 68, 85, 519 N.W.2d 621, 628 (Ct. App. 1994) ("We think ineffective assistance of counsel cases should be limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue."). Beauchamp's trial lawyer did not give him ineffective

---

[3] *People v. Govea*, 701 N.E.2d 76, 83 (Ill. App. Ct. 1998), also declined to apply the guidelines adopted by *Vogel v. Percy*, 691 F.2d 843, 846–848 (7th Cir. 1982), because those guidelines conflicted with Illinois law that allowed, *inter alia*, the admission of a witness's prior inconsistent statements if:  (1) "the witness is subject to cross-examination concerning the statement"; and (2) "narrates, describes, or explains an event or condition of which the witness had personal knowledge, and (A) the statement is proved to have been written or signed by the witness." *See* 725 ILCS 5/115–10.1.

representation during his trial by not seeking to have the trial court adopt the *Vogel* guidelines.

¶ 19. Beauchamp also contends that the trial court's failure to consider and apply the *Vogel* guidelines was "plain error." Invocation of the "plain error" doctrine to permit the review of unobjected-to matters is, however, reserved for those rare situations where the error is " 'obvious and substantial.' " *State v. Jorgensen*, 2008 WI 60, ¶ 21, 310 Wis. 2d 138, 154, 754 N.W.2d 77, 85 (quoted source omitted). Given that no published Wisconsin appellate decision has even cited the *Vogel* guidelines and that, as seen in footnote 3, an Illinois appellate court did not adopt those guidelines when to do so would modify Illinois law whose protections for the defendant essentially mirrored those given to Beauchamp here, Beauchamp's contention that the trial court committed "plain error" is without merit.

¶ 20. We affirm.

*By the Court.*—Judgment and order affirmed.